### UNITED STATES v. CHISOLM.

(Circuit Court, S. D. Alabama, N. D. November 19, 1906.)

1. CRIMINAL LAW—INSANITY—SEPARATE ISSUE—TRIAL—DISCRETION.

Where, pending a trial of a criminal case, it is suggested that the prisoner is so insane as to be unable to make a rational defense, etc., the manner in which such suggestion should be disposed of rests entirely in the discretion of the court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1392–1398.]

2. SAME—EVIDENCE.

Whether a prisoner's departure from general rules governing human action demonstrates such aberration of mind as exempts him from criminal responsibility, or shows unfitness on that account to be placed on

trial, depends on the circumstances in each case, to be gathered not merely from the act for which he is arraigned, but to be tested in view of every fact and circumstance showing the condition of his mind at the time to which the inquiry relates.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1285–1288.]

3. SAME—EVIDENCE—EXPERTS—OPINIONS—WEIGHT.

On an issue as to the insanity of accused, the jury is not bound by the opinions of experts, provided the jury is convinced from all the evidence that the experts' opinions and conclusions are incorrect.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1081.]

4. SAME—TRIAL—BURDEN OF PROOF—OPENING AND CLOSING ARGUMENT.

On trial of an issue as to a prisoner's inability by reason of insanity to properly make a rational defense and intelligently aid his counsel, the burden of proof being on the prisoner, he is entitled to the opening and concluding argument.

## On Inquiry as to Sanity of Prisoner.

Alexander R. Chisolm, paying teller of the First National Bank of Birmingham, was indicted for embezzlement of its funds, and, on being arraigned, pleaded not guilty. After the trial had proceeded for several days his counsel suggested that the prisoner was not then in a fit mental condition to make a rational defense, and asked the court to suspend the trial and make inquiry upon that point before proceeding further, stating that the facts upon which they based the suggestion had only come to their knowledge the day before. Thereupon the court took a recess and heard in detail, in chambers, the reasons upon which counsel based their suggestion; the district attorney and assistants being present. It then developed that an eminent expert who had been summoned in behalf of the government, in anticipation of the defense of insanity at the time of the commission of the offense, had given the opinion that the prisoner was now suffering with incipient paresis, and possessed of delusions, which rendered him unfit to aid his counsel in conducting a rational defense, and that thereupon other experts had been summoned by the government, who had also examined the prisoner. The presiding judge then called these experts and others before him at chambers, and, finding that they differed radically as to the mental condition of the prisoner, suspended the trial, and directed an inquisition before the jury which had been trying the prisoner, as to his present mental condition. A number of expert and nonexpert witnesses testified. Some of them gave it as their opinion that the prisoner was entirely sane. Others testified to the contrary, and that his present mental condition was such that he could not rationally aid his counsel in making defense. After the testimony was all in, and before argument of counsel, which both sides asked, the court delivered its charge to the jury.

Thos. R. Roulhac, Dist. Atty., and Lee R. Bradley, Special Asst. Dist. Atty., for the United States.

Frank S. White and John London, for the prisoner.

JONES, District Judge (charging jury). You understand from the instructions given you at the beginning of this inquisition that the inquiry now submitted to you in no way involves any decision as to the prisoner's guilt or innocence of the charge upon which he was arraigned. He can neither be convicted nor acquitted by any finding you may make on this issue. The question the court submits to you is whether the prisoner at this time is possessed of sufficient mental power, and has such understanding of his situation, such coherency of ideas, control of his mental faculties, and the requisite power of memory, as will enable him to testify in his own behalf, if he so de-

sires, and otherwise to properly and intelligently aid his counsel in making a rational defense.

The defendant, as you know, had been arraigned and pleaded not guilty, and the trial had proceeded on the merits some days, when the counsel for the prisoner suggested, for reasons then partially stated in open court, that the prisoner was insane or partially so, and in such mental condition that it would be unjust to further proceed with the trial now. How such a suggestion should be disposed of rests entirely in the conscience and discretion of the court. Finding on conference with eminent experts who had examined the prisoner that they differed radically whether his present mental condition was such that it would be just to proceed with the trial, the court, having doubts as to his real mental condition, submitted the issue to you. In doing so, it only followed the pathway marked out by courts of the highest authority, which have frequently declared that in such a case "a just judge will not fail to relieve his own conscience by submitting the facts to a jury."

Much latitude has been allowed in the evidence as to the family history of the defendant, his career from youth to the present time, the nature of the occupations in which he has been engaged, the manner in which he has discharged his duties, his personal characteristics and habits, the means by which the offense charged is alleged to have been committed, his declarations and statements at various periods, and his actions from the time he was confronted with the charge up to the present hour. You have also had the variant opinions of the experts, for the reasons they have severally stated, as to the prisoner's present mental condition and fitness for trial. This broad investigation was permitted, because, after all, we cannot safely apply general experience as to the workings of the human mind in determining the condition of a particular individual's mind at any given time, unless we look also to the personal character of the individual, to the grade of his mental powers, to the motives by which he is governed, to his view of things, and finally to the course of his whole life and the nature of the particular act with which he is charged, and the circumstances under which it was committed. While we are not directly concerned on this inquiry whether or not the defendant was insane at the time of the commission of the offense charged, the period elapsing between that date and the present occasion is so recent that his then condition, as you may find it to have been at that time, may shed some light in forming your opinion as to what his mental condition is at this time.

Finite man at last gropes but darkly into the conditions of the human mind, and it is impossible for any court to lay down any fixed rule, as a matter of law, as to any particular state of facts which will unerringly demonstrate sanity, or the contrary condition of the human mind, or the degree of aberration which, when found to exist, exempts an accused person from criminal responsibility, or unfits him to rationally aid in his defense when arraigned for crime. An approved text-writer has said:

"All men are erring. Mere errors, therefore, do not excuse from punishment. All men have vicious propensities. Therefore a propensity to do a certain evil thing does not excuse the doer. All men are only in a limited degree deterred

from wrongdoing by fear of the consequences. The mere fact, therefore, that a defendant was not fearful of punishment when doing an act does not show him to have been insane. All men are more or less regardless of the claims of conscience. So the mere fact that a prisoner showed a hardened heart does not prove him insane. But all sane men act with a uniformity of plan, varied and winding, indeed, sometimes, yet uniform in the manifestations of the mind. All derive their knowledge of visible things from what is really tangible to their outward senses. All love the friends who sincerely do them good. All manifest affection, under ordinary circumstances, for their offspring. All obey, in short, certain laws which we recognize as belonging to the mind of a sane man. When, therefore, a person is found acting, either at times or habitually, contrary to these known laws, we may say that he is more or less insane."

But whether or not an individual's departure from general rules governing human action demonstrates such aberration of mind as exempts him from criminal responsibility, or shows unfitness on that account to be placed on trial, depends upon the circumstances of the particular case, and is to be gathered not merely from the act for which he is arraigned, but must also be determined and tested in view of every other fact and circumstance which sheds light upon the condition of the defendant's mind at the period as to which the inquiry is directed. Each particular case, therefore, presents a practical question, in the decision of which general statements of the theories of medical men and the reasoning of jurists furnish only partial, and sometimes little, if any, practical help.

A person may be insane or partially so at one time, and subsequently be restored to sanity, and afterwards be a responsible being in the eyes of the law. The precise question you have here, as you understand, is to determine whether at this time the prisoner is in such possession of his mental faculties as enables him to rightly comprehend his condition with reference to the proceedings against him, and to rationally aid in the conduct of his defense. The reason why an insane person, or one who though not insane, is laboring under such mental infirmity as to prevent his rationally aiding in his defense, should not be put to trial, is, in the language of the old books, "because he is disabled by the act of God" from making a just defense if he has one, and "because there may be circumstances lying in his private knowledge which would prove him innocent or his legal irresponsibility, of which he can have no advantage, because they are not known to persons who undertake his defense." Nevertheless, a person, though not entirely sane, may be put upon trial in a criminal case if he rightly comprehends his own condition with reference to the proceedings, and has such possession and control of his mental powers, including the faculty of memory, as will enable him to testify intelligently and give his counsel all the material facts bearing upon the criminal act charged against him and material to repel the criminating evidence, and has such poise of his faculties as will enable him to rationally and properly exercise all the rights which the law gives him in contesting a conviction.

It is proper that I should say to you that the defense of insanity, or mental inability to properly conduct a defense, is frequently resorted to without any just basis, and that in passing upon such questions you may give that consideration such weight as in your opinion

it may deserve in connection with all the facts in this particular case. It would be a reproach to justice if a guilty man escaped the penalty for a crime upon a feigned mental irresponsibility, or postponed his trial upon a feigned condition of mind, as to his inability to aid in his defense. On the other hand, it is also my duty to caution you with earnestness that it would be likewise a reproach to justice and our institutions, if a human being "made in God's own image," while suffering as the old books put it "under a visitation of God," were compelled to go to trial at a time when he is not sufficiently in possession of his mental faculties to enable him to make a rational and proper defense. The latter would be a more grievous error than the former; since in the one case an individual would go unwhipped of justice, while in the other the great safeguards which the law adopts in the punishment of crime and the upholding of justice would be rudely invaded by the tribunal whose sacred duty it is to uphold the law in all its integrity. As said by the Supreme Court of the United States, with reference to feigned defenses of mental weaknesses, and the consequences which may result to society:

"It seems to us that undue stress is laid in some of the cases upon this consideration. The possibility of such results must always attend any system devised to ascertain and punish crime, and ought not to induce the court to depart from principles fundamental in the criminal law, and the recognition and enforcement of which are demanded by every consideration of humanity and justice."

You are human beings and cannot altogether shut your eyes to the things you see around you. This case naturally and rightly has excited great interest. The crime charged involves a very serious offense. The law very properly throws all the safeguards it can around the honest keeping of the accumulations of the well to do and the savings of the poor, when placed in the national banks of the country. The prevention of offenses like that here charged is of grave concern to the public. Yet, on the other hand, as I earnestly caution you, it is of equal, if not of greater, public concern that in the disposition of such an issue as that now submitted to you no supposed public exigency for speedy trial, to prevent the repetition of such offenses, should induce the trial of a human being on such a charge, if he be, in fact, in such mental condition that he cannot fairly and rationally make his defense. Our duty and province are to hold the scales of justice even, in view of all these considerations, in order that justice, and nothing but justice, as defined by the law of the land, may be done in this particular case, as to holding this defendant on trial at this time. No feeling of sympathy or regard for individuals should move your judgment a hair's breadth. Neither, on the other hand, ought you to allow your conclusions to be influenced in the remotest degree by any thought as to what the public may say or think of the effect or justice of the conclusion at which you arrive. You 12 men alone, out of all the millions of American freemen, administer their justice here, and in the last analysis are the only authoritative advisers of the court on this issue. In the discharge of that duty, the responsibility and sacredness of which I know you appreciate, you are answerable only to your Creator and your consciences.

·What are the ·facts· which must govern your decision? · Having no personal knowledge, you must ascertain the facts largely from the mouths of witnesses. There are many rules for determining the amount of credence which the jury should give a witness. The most important of them are that you may look at the relationship of the witness by blood or family ties, or of business, to the person affected by the inquiry, or any other fact which may show bias or motive to misstate the facts of a transaction, or to color them. You may look also to the intelligence of the witness, his manner and demeanor on the stand, and his experience with regard to matters about which he gives his opinion; and, if such be the case, that a witness has made statements out of court inconsistent with those he testifies to in court. You should also look at the interest of the witness, if any, in the event of the decision of the particular matter under investigation. These and other rules on this subject are mere guides to enable the jury to gather the truth of the matter about which the witness testifies, and are of no further consequence whenever the jury reaches the conclusion that the particular witness has told the truth.

You are not bound by the opinions of experts. If your common sense, reason, judgment, and observation, in view of all the evidence, produce the conviction in your minds that the expert is wrong in his opinions and conclusions, you must be governed by your own opinion, and not by his. A jury should not capriciously or recklessly disregard the advice of medical men of experience in dealing with diseases of the human mind, and the advice of physicians as to such matters should be carefully weighed, but the final responsibility in arriving at a decision as to the mental condition of the prisoner rests upon the jury.

You have observed the defendant and heard the testimony. Most of the medical witnesses have spoken of the prisoner's delusions, which some of them are of the opinion are real, and some believe to be feigned. All the testimony of the medical experts seems to agree that the prisoner has neurasthenia. One of them gave the opinion that he is suffering from incipient paresis. The name of the mental disease, if the prisoner be, in fact, suffering from such disease, is not important. Physicians may disagree as to the diagnosis of the disease, but we have little to do with mere names. The real question is:· Does the mental impairment of the prisoner's mind, if such there be, whatever it is, disable him, under the rules I have already given you, from fairly presenting his defense, whatever it may be, and make it unjust to go on with his trial at this time, or is he feigning to be in that condition, which, if true, renders him unfit to be kept on trial at this time?

In the absence of any proof on the subject, the law presumes that every ordinary being of mature age is responsible in all respects, and the government in prosecuting a defendant for crime is not bound to offer any evidence on that point, but may rest upon the presumption. When, however, any facts are developed which go to rebut the presumption of responsibility, it becomes a question of fact in the particular case. While the force of the presumption of innocence until guilt is found beyond a reasonable doubt has no field of operation whatever in solving such an issue as that now submitted to you; yet the humanity of the law is such that no·man should be considered a proper subject

149 F.—19

for criminal prosecution, of whose ability to fairly and rationally make a defense there is just ground for reasonable doubt in the minds of the judge or jury which passes on that issue.

In short, the inquiry you have to solve is this: Is the mind of the defendant at the bar, in view of the instructions I have given you on this point, so far from normal and so impaired by disease as to make it improper and unjust to keep him on trial for the offense for which he has been arraigned? The form of your verdict will be: We, the jury, find the prisoner at the bar is, or is not (according to the view you take of the evidence), of sufficiently sane mind and in such possession of his mental faculties as make it proper to hold him on trial.

To aid you in arriving at a right determination of this important issue, counsel for the government and the prisoner will now call your attention to such considerations, as, in their conscientious judgment, point to the proper verdict. As the burden rests upon the prisoner, in view of the general presumption of sanity, to generate a fair, reasonable doubt upon the whole evidence as to his fitness to be further tried at this time, and as that is the only issue now before the court, counsel for the prisoner will open and conclude the argument. If, at its conclusion, further instructions seem called for, the court will then give them.

### NOTE.

The jury found that the prisoner was of sufficiently sane mind, and in such possession of his mental faculties as made it proper to proceed with his trial.