No. 41,061

STATE OF KANSAS, *Appellee*, v. WALTER RAY SEVERNS, *Appellant*.

(336 P. 2d 447)

Opinion filed March 7, 1959.

*E. Lael Alkire* and *Aubrey J. Bradley, Jr.*, both of Wichita, argued the cause and were on the briefs for the appellant.

*Keith Sanborn*, County Attorney, and *Nicholas W. Klein*, Deputy County Attorney, argued the cause, and *Warner Moore*, of Wichita, and *John Anderson, Jr.*, Attorney General and *Robert E. Hoffman*, Assistant Attorney General, were with them on the brief for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This is the second appearance in this court of an appeal by Walter Ray Severns in a criminal action, the present appeal being from a conviction of murder in the second degree.

A historical review of the background of this criminal prosecution from the date of its inception is essential to a proper under-

standing of the events and circumstances giving rise to the instant appeal.

In 1943 the defendant, after having been first examined and found sane by a sanity commission, was tried in the district court of Sedgwick County on an information charging him with murder in the first degree of Inez Viola Burling, a child eight years of age. Such child was a niece of the defendant's wife and was living in the Severns home at the time of her death. At the conclusion of the trial, at which the defendant testified as a witness in his own behalf, the jury found him guilty as charged and determined the punishment to be death. Following the denial of his motion for a new trial the trial court rendered judgment on the verdict. Thereupon defendant appealed to this court, specifying that the court erred in its rulings on the introduction of evidence, in submitting the cause to the jury on the charge of murder in the first degree, and in instructing the jury. On review of the appeal we held his claims of error with respect to rulings on the introduction of evidence and in submitting the cause to the jury on the charge of murder in the first degree were without merit but reversed the judgment solely on the ground of error in other instructions.

It is neither necessary nor required that we here review the sordid facts on which, in the first appeal, we held specifically that under the evidence of record the trial court would have committed error had it failed to give an instruction on murder in the first degree, or detail the reasons given for reversing the case on the basis of error in other instructions. It suffices to say those facts and reasons are already spread at length on the pages of our reports and readily available to readers of this opinion, who may desire further information with respect thereto, upon resort to *State v. Severns,* 158 Kan. 453, 148 P. 2d 488.

After his first conviction the defendant was incarcerated in the state penitentiary pending his appeal. Sometime thereafter the then Warden of the penitentiary requested the district court for a hearing under the provisions of G. S. 1935, 62-2406, now G. S. 1949, 62-2406, providing for a commission to examine into the sanity of a person awaiting the death penalty. Pursuant to this request the district court caused an investigation to be made and, after a conference with the members of the trial sanity commission, denied the request.

On November 19, 1944, following our reversal of the previous judgment and sentence and prior to the date set for his second trial,

a new commission was appointed. It found defendant to be suffering from a prison psychosis, rendering him insane and unable to comprehend his position and to make his defense. Thereupon, as required by statute (G. S. 1949, 62-1531), he was admitted to the State Hospital for the dangerous insane at Larned where he remained, undergoing treatment, until May 15, 1957, when, under direction of proper officials of that institution, he was returned to the court from which he was received to again stand trial for the crime of murder in the first degree as charged in the information.

Upon defendant's return to Sedgwick County the district court appointed counsel to represent him. Thereafter, and on May 27, 1957, his counsel, E. Lael Alkire, filed a motion alleging in substance that (1) defendant might be an insane person, hence incapable of comprehending his position and of advising his attorney of such defenses he might have; and (2) that he had been a sufferer from a mental illness known as schizophrenic reaction, catatonic type, and as a result, by-product, or residual thereof, he was suffering from memory gaps, and unable to remember anything whatsover concerning the alleged crime and therefore incapable of defending himself. Such motion then asked for the appointment of a commission to determine whether the defendant (1) was presently sane or insane; (2) was suffering from a mental disturbance known as schizophrenic reaction, catatonic type, and (3) as a result of his mental illness he had suffered a loss of memory, particularly as to the time pertinent to the alleged crime and the occurrences surrounding it.

The court granted the foregoing motion and appointed a commission, consisting of three qualified physicians. This commission conducted a series of examinations and then returned its report. Portions thereof, set forth in the abstract as pertinent to this appeal, read:

"1. From a review of reports received from the Larned State Hospital—the social history, the psychological testing and the psychiatric interview—it would be our impression that this patient is suffering from a condition diagnosed as schizophrenic reaction, paranoid type, in partial remission manifested by massive repression resulting in memory loss, by flatness of affect by hyperalertness and that the manifestations of his illness are now on a characterological level.

"2. It is our opinion that at the present time this person would be considered competent, that he knows the nature of the alleged crime and that he knows right from wrong; that his memory loss is not on an organic basis, nor is it a form of malingering but is part of the mental illness which is still present.

"3. The question as to whether or not the memory loss makes this patient unable to take part in his own defense must be answered as a legal question and not as a medical one. One may argue that he would be capable of assisting in his own defense because at the present time he is competent, knows right from wrong and has sufficient judgment, even though he does not remember the events of the crime. Or one might argue that because he does not remember the events of the crime, he could not help prepare his defense.

"4. . . . However, it is recognized that the presence of a mental illness does not necessarily mean that a person was incompetent or does not know the nature of his acts, or right from wrong.

"5. As to the outlook of this patient, the psychological tests would indicate that this patient would react poorly to stress and that under stress there would be a possibility of a return of more severe symptoms. It would also be expected that this person's control of his impulsive behavior would be poor and, therefore, he would be expected to have a greater tendency to impulsive destructive behavior than the average person; that the possibility of expecting a greater social remission or social recovery from this patient by further treatment would be considered poor to hopeless."

It should be noted that at the time of the return of the report all three members of the commission were personally present; that, for the benefit of court and counsel, each member was sworn as a witness and examined at length; and that their statement was in line with the findings made in such report. It should also be noted that, when the examination of the members of the commission was concluded, defendant's counsel moved for an order continuing the trial of the case indefinitely on grounds the defendant was still technically insane, in that he had suffered a memory loss, could not assist in his defense, and should be returned to the state hospital for further treatment; and that after a full and complete hearing on this motion the trial court made certain written findings which read:

"THE COURT FINDS that the defendant, Severns, is not insane, nor an idiot, nor an imbecile; that he is able to comprehend his position at the present time, with reference to the charges pending against him; that he knows right from wrong at the present time; and that at the present time, he knows the nature of his acts.

"THE COURT FURTHER FINDS that the defendant, Severns, is suffering from a memory loss which memory loss includes that period of his life immediately prior to and following the alleged offense charged in this case; that said memory loss covers a greater period of time than that herein mentioned, but that the only pertinent memory loss relating to this case is as above outlined; that said memory loss is not of an organic basis and is not a form of malingering.

"THE COURT FURTHER FINDS that returning the defendant to the Larned State Hospital would be useless, from a standpoint of expecting additional improvement, the defendant having probably reached his maximum recovery.

"THE COURT FURTHER FINDS that this case was heretofore, and in the April term, 1943, tried, and that there is available a transcript of the testimony of said trial, and that apparently the defendant at that time had not been adjudged insane, but that pending an appeal and while he was committed to the Kansas State Penitentiary at Lansing, Kansas, and prior to the time he was remanded for a new trial as ordered by the Supreme Court of the State of Kansas, he became insane.

"IT IS THEREFORE THE JUDGEMENT OF THIS COURT that the motion of defendant be denied; that the trial proceed as scheduled on June 24, 1957; and that the loss of memory between the first trial and this trial is not sufficient in and of itself to prevent the defendant from proceeding to trial as herein ordered."

Following action as just indicated the defendant was again tried on the information by a jury which found him guilty of murder in the second degree. Later, his motion for a new trial having been overruled, judgment was rendered on the verdict and defendant was sentenced to confinement in the state penitentiary for the commission of such offense. Thereupon he perfected the instant appeal and brings the case to this court under a specification of error, which raises but one question, to which we shall presently refer.

Supplementing what has been heretofore related, it should be stated the record discloses that in the first trial appellant testified as a witness in his own behalf, that the transcript of his testimony and that of all other witnesses testifying in such case was at all times available to him and his counsel prior to and during the second trial, and that, with specific reference to his testimony in the first case, the trial court, in a "Memoranda of Findings" on file in such case, stated:

"Walter Ray Severns took the stand in his own behalf, and while his answers were barely audible, and sometimes inaudible, they were intelligent answers."

The general premise on which appellant founds his right to relief in this case is set forth in that portion of his single specification of error which reads:

"The Trial Court erred in requiring the appellant to stand trial when the appellant, under the facts and the Trial Court's findings, had suffered an involuntary loss of memory, which memory loss, as found by the Court, covered specifically the time of the alleged crime, and which memory loss was brought about as a residual or by-product of insanity, and did, in truth and in fact, render the appellant incapable of speaking in his own defense, whatever it might have been, or of having others speak for him . . ."

In connection with the claim thus made it will be helpful to this opinion, from the standpoint of brevity, to state at the outset:

1. That there cannot be and is no dispute between the parties regarding the correctness of the facts, events, conditions and circumstances set forth in the preceding historical review.

2. That in his brief and on oral argument appellant concedes (*a*) *the only question raised by his appeal is whether the trial court erred in requiring him to stand trial when, under the existing facts and its findings, he had suffered an involuntary loss of memory covering specifically the time,* and for that reason could not make a defense, and (*b*) that, if properly placed on trial, all subsequent proceedings were regular and the record with respect thereto, discloses no sound ground for reversal of the judgment.

In support of his position on the conceded single question involved, which we have heretofore underlined for purposes of emphasis and future reference, appellant spends much time and space on contentions to the effect that at common law, and in most jurisdictions by express statutory provision, the universal rule is that a person while insane cannot be tried or convicted for the commission of a crime. We are not disposed to labor arguments advanced, or the numerous decisions cited, by appellant in support of his claim this rule of law is well-established. It suffices to say this court is committed to such rule by statute (G. S. 1949, 62-1531) as well as its decisions. See *In re Wright,* 74 Kan. 406, 407, 86 Pac. 460, where it is said:

"It is universally conceded that a defendant cannot be compelled to answer to, or defend against, a criminal charge when by reason of an insane mental condition he is unable to do so in a rational manner . . ." (p. 408.)

See, also, *In re Wright,* 74 Kan. 409, 89 Pac. 678, where it is held:

"No person can be compelled to answer for a crime who at the time is incapable of doing so in a rational manner on account of mental disability occurring after the alleged commission of the offense charged against him.

"The court having jurisdiction of a person charged with the commission of a crime has the exclusive right and power to determine the mental fitness of the defendant to make a proper answer and defense to such charge, unless otherwise provided by statute." (Syl. ¶¶ 1, 2.)

And in the opinion said:

". . . It is the law of this country, independent of any statute, that a defendant shall not be compelled to answer to, or defend against, a criminal charge if mentally or physically unable at the time to do so in a rational manner, when such disability has developed after the alleged commission of such crime; but, in the absence of a statute to the contrary, the duty of determining

·whether or not such disability exists rests with the court whose duty it is to hear such answer or defense." (pp. 411, 412.)

For some of our decisions following the rule of the Wright case, and recognizing the mandate of our present statute (62-1531) which, it is to be noted, was subsequently enacted, see *The State v. Ossweiler,* 111 Kan. 358, 365, 207 Pac. 832; *State v. Detar,* 125 Kan. 218, 221, 222, 263 Pac. 1071; *State v. Brotherton,* 131 Kan. 295, 299, 291 Pac. 954. See, also, 44 C. J. S., Insane Persons, 283, 284 § 127; 23 C. J. S., Criminal Law, 240 § 940; 14 Am. Jur., Criminal Law, 801, 802 §§ 44, 45; 5 Wharton's Criminal Law and Procedure, 159, 160 § 2020, for a general statement of the same rule and citation of numerous authorities (e. g., *Freeman v. The People,* 4 Denio (N. Y.) 2, 25, 47 Am. Dec. 216, 225; *In re Buchanan,* 129 Cal. 330, 61 Pac. 1120; *Jordan v. State,* 124 Tenn. 81, 87, 88, 135 S. W. 327; *The People v. Burson,* 11 Ill. 2d 360, 143 N. E. 2d 239), from foreign jurisdictions adhering thereto.

Careful analysis of the foregoing authorities, including our own (See, e. g., *State v. Detar,* Syl. ¶ 2, supra; *State v. Brotherton,* p. 300, supra), discloses the test of insanity of an accused precluding his being *put on trial* for a criminal offense is his capacity to comprehend his position, understand the nature and object of the proceedings against him and to conduct his defense in a rational manner. Stated in different fashion, if the accused is capable of understanding the nature and object of the proceedings going on against him; if he rightly comprehends his own condition with reference to such proceedings, and can conduct his defense in a rational manner, he is, for the purpose of being tried, to be deemed sane, although on some other subject his mind may be deranged or unsound.

Having established the issue presented when the question of sanity at the time of trial is raised it can now be pointed out that, in the face of the present record, we are here concerned with but one of the three tests, to' which we have just referred, in our consideration of appellant's sole claim of error. This, we may add, is true for two reasons. First, because both the sanity commission and the trial court, based on facts which were supported by substantial competent evidence and for that reason cannot be disturbed, found that appellant understood the nature and object of the proceedings against him, comprehended his position at the time and knew the difference between right and wrong. Second, for the reason, that by its very nature and appellant's own admis-

sions, such claim of error is limited to the question whether the sustaining of his memory loss compels a conclusion he was unable to conduct his defense on the trial of this case in a rational manner, under the existing facts and circumstances.

Before giving further consideration to the decisive question raised by appellant it should be also stated that counsel for both parties assert they have been unable to find any reported cases, either in this jurisdiction or elsewhere, that, under the facts and circumstances of record, may be regarded as controlling precedents and, we may add, our extended research of such authorities has failed to disclose any.

True, we find three cases where memory loss is considered and recognized as a sufficient ground for requiring a hearing on the question whether an accused, by reason thereof, is unable to conduct his defense in a rational manner and therefore should not be forced to go to trial. One of such decisions is *Youtsey v. United States*, 97 Fed. 937, where a judgment convicting a defendant of embezzlement was reversed because of failure of the trial court to grant a hearing on that question. Another is *United States v. Chisolm*, 149 Fed. 284, where a hearing was granted and such question submitted to a jury for its determination under lengthy instruction, at the close of which the jury found the accused was of sufficient sane mind and in such possession of his mental faculties as to make it proper to proceed with his trial. Still another is *State v. Swails*, 223 La. 751, 66 So. 2d 796, where an accused charged with murder, who had been found insane and committed to a mental hospital, was seeking relief from the hospital and the right to be tried for the crime, while the state was claiming loss of memory as to the events occurring at, before and after the commission of the crime charged, rendered him incapable of making a rational defense and hence required his return to the hospital. The court held against the state's contention and remanded the case for trial. Since the foregoing decisions are clearly distinguishable, from the standpoint of facts and principles involved, and are not to be regarded as controlling precedents further discussion respecting them would be purely academic. Indeed our only purpose in here mentioning them is to give readers of this opinion an opportunity to review the few reported appellate court decisions we have been able to find, in which memory loss, standing alone, has been relied on as precluding trial of the accused in a criminal action.

Absent controlling precedents, and with full recognition of the rule announced in *In re Wright,* supra, and other decisions of like import, it becomes obvious the all-important question, on which appellant relies to sustain his position the judgment should be reversed, must be determined in the light of the facts before the trial court at the time it reached its conclusion his loss of memory between the first and the second trial was not sufficient in and of itself to prevent him from again proceeding to trial for the crime of murder. We therefore turn to those matters, mindful as we do so that, under the record as presented, the findings and conclusions of the sanity commission respecting the mental status of the appellant must be accepted as controlling and that, except for its conclusion to the effect it was possible for appellant to conduct his defense in a rational manner, the same holds true of all findings and conclusions made by the trial court with respect to the same subject.

What were the facts, matters and things of record on which the trial court had a right to rely, as we must assume it did, in reaching its decision? Without attempting to recite all of them, it may be stated the more important were:

That a sanity commission, theretofore appointed for the purpose of determining the appellant's mental status, had made its report and found the appellant would be considered competent, that he knew the nature of the alleged crime, and that he knew right from wrong.

That the respective members of such commission had testified as witnesses with respect to their findings and, under oath, had stated in substance that while the appellant was suffering from a memory loss which included that portion of his life, immediately prior to and following the alleged offense, he was, except for such memory loss, otherwise normal and from a medical standpoint to be considered as competent.

That the report of such commission contained no finding that the appellant's memory respecting the events, circumstances and conditions surrounding the commission of the alleged crime could not be refreshed.

That the records of the court disclosed that in the first trial appellant had testified as a witness in his own behalf; that while so testifying his answers to questions propounded to him, although barely audible, were intelligent answers.

That the transcript of the record in the first case had been preserved and was available to appellant and his attorneys, who could read it and thus ascertain the names of all witnesses who testified in the first case; apprise themselves of the defense made in that trial; acquaint themselves with the testimony of such witnesses, including that of appellant while testifying as a witness in his own behalf; refresh appellant's memory with respect to all the facts and circumstances, testified to by him at that time; and become fully cognizant of any and all other matters transpiring during the trial of such action which might affect appellant adversely or otherwise on the trial of the second action.

That, under the peculiar facts and circumstances of the case, having testified as a witness on his own behalf at the first trial and particularly since he had sustained a memory loss as to the events, conditions and circumstances, relating to the commission of the alleged crime, appellant would be entitled, on a proper showing, to have his former testimony received in evidence on the second trial.

That the availability to appellant and his counsel of the full and complete record of the first trial was entitled to weight and consideration in determining whether, standing alone, appellant's memory loss precluded him from making a rational defense.

That appellant, like any other defendant, was entitled to a fair trial but not a perfect one. (See *Lutwak v. United States*, 344 U. S. 604, 97 L. Ed. 593, 73 S. Ct. 481; *Steele v. United States*, 243 F. 2d 712.)

That having had an opportunity to observe the conduct, attitude and demeanor of the appellant, who was present at all preliminary stages of the proceedings leading up to and including the date of the making of its own findings, it (the trial court) had a right to exercise sound judicial discretion in determining whether the appearance, demeanor and conduct of appellant, throughout such proceedings, were of such character as to warrant a conclusion he was capable, with the assistance of his attorneys, to conduct his defense in a rational manner.

Based on what has been heretofore stated and held we are unwilling to say the confronting facts, conditions and circumstances of this case required the trial court to hold, as a matter of law, that appellant's loss of memory between the first and second trials was sufficient, in and of itself, to preclude him from conducting

his defense in a rational manner or prevent him from proceeding to trial for the crime of murder. Moreover, we are convinced, that in the face of the facts, matters and things of record, to which we have referred throughout this opinion, that tribunal did not abuse sound judicial discretion in holding that his loss of memory between the first and second trials was not sufficient, in and of itself, to prevent him from proceeding to trial. Therefore, since no irregularities in the subsequent trial or resulting judgment are assigned as error, it necessarily follows the trial court did not err in overruling appellant's motion for a continuance of the trial, based on the premise he was still technically insane in that he had suffered a memory loss and hence could not assist in his defense; or in rendering judgment in accord with the verdict, finding him guilty of murder in the second degree.

The judgment is affirmed.