**UNITED STATES of America,**
**Plaintiff,**

v.

**Robert WILSON, Defendant.**
**Crim. No. 46–65.**

United States District Court
District of Columbia.
Nov. 25, 1966.

Alfred Hantman, Principal Asst. U. S. Atty., for the United States.

Joseph S. McCarthy, Washington, D. C., for defendant.

## MEMORANDUM OPINION

McGUIRE, District Judge.

The individual in this case stands accused in a 9-count indictment of the crimes of robbery, assault with a dangerous weapon, and carrying a dangerous weapon, in violation of specific and indicated provisions of the District of Columbia Code, all arising from events occurring in the afternoon of October 2, 1964 and in which it is alleged he was a participant. Among other things it is charged that the accused was involved in the holding up of two drug stores and the theft of a car. Defendant's alleged criminal activities terminated when, during a high speed police chase, he lost control of the stolen car he was driving and crashed into an abutment. In this crash his companion was killed and he himself severely injured. Taken unconscious to the Washington Hospital Center he remained there until he was transferred, still unconscious, to the District of Columbia General Hospital on October 7. He did not regain consciousness until October 26, 1964. He was subsequently diagnosed as having suffered a cerebral contusion and concussion of a severe nature leaving him with a residual left-sided partial paralysis and damage to the brain.

The case was set for arraignment on January 29, 1965 and the jacket entry indicates it was continued for one week for appointment of counsel. On February 5, defendant was arraigned, pleaded not guilty, and trial date was set.

When interviewed by his court appointed counsel, defendant indicated that he had absolutely no recollection of any nature of any events that took place on the afternoon of October 2, 1964. On the basis of this information, on February 19, 1965 a motion made in his behalf for mental examination was heard and granted, and on February 23 he was committed to St. Elizabeths Hospital for a period not to exceed sixty days for mental observation.[1] This period was subsequently extended at the request of the hospital for an additional thirty days.

On April 14 and May 19, 1965 he was examined and his case reviewed in detail at a medical staff conference. At that time he was found to be without mental disorder. The hospital, however, presuming in the circumstances to pass upon the legal question concluded he was incompetent for trial. It stated further that no symptoms of mental disease existed at that time; that he was well oriented, in contact with his environment; that his thinking was logical and coherent; and that there was no evidence of any symptoms of a psychotic or psychoneurotic process.

Alluding then specifically to the matter of competency, it was stated he "is suffering from an organic amnesia, resulting from the automobile injury he received on October 2, 1964 and which amnesia has existed for several months. He is, however, aware of the charges against him, although he claims loss of memory with regard thereto." And further, that while organic amnesia and left-sided partial paralysis were found and it was concluded that they were sequellae of cerebral contusion and concussion, it was specifically concluded he was not suffering from a mental disease or that the so-called brain injury had resulted in any

---

1.  24 D.C.Code, § 301(a).

abnormality of thought or behavior "other than his amnesia * * *" and that it was the opinion of the hospital further that he is not now [May, 1965] and was not on October 2, 1964 suffering from any mental disease or defect and was not receiving any medication.

As a consequence, a mental competency hearing was had June 22, 1965 and defendant was found to be mentally incompetent to stand trial.[2] And so the matter lay until August 24, 1966. At that time the hospital advised the Court that since the hearing on June 23, 1965 serial examinations of the individual patient had been conducted revealing a continuation of his amnesia as well as the left-sided partial paralysis. Again the hospital repeated that it was believed that such was the result of a cerebral contusion and concussion resulting from the injury sustained on October 2, 1964 and that it was believed further "that the amnesia is permanent, and that it does interfere with the patient's ability to assist counsel in his own defense", indicating further: "However, the patient has a rational and realistic understanding of the nature of the charges against him, based on the information given him since his injury." It further stated that since in its view he was not presently suffering from a mental disease or disorder and that he probably was not suffering from such a disorder on October 2, 1964, it was recommended that the Court take appropriate action to dispose of the matter at least from the standpoint of the hospital.

In the meantime, his counsel wrote the hospital authorities and was advised on July 29, 1966 that while it was still their opinion he would not be able to aid in his own defense in terms of remembering what happened to him on the aay of the alleged offenses, however, being without mental disorder and understanding fully the charges against him, he can "synthesize an accurate historical picture of what certainly must have happened."

And then changed its hitherto expressed position with the caution and observation: "It is not for us to say whether he is competent from the legal point of view, however."

Prompted by this communication a second competency hearing was scheduled for and held on September 27 and 28, 1966, at which time the diagnosis contained in the hospital report was amplified and corroborated by expert medical testimony. It is the finding of this Court that this defendant is a person who, while in the full possession of his mental faculties, including the faculty of memory, on the afternoon of October 2, 1964, has no memory of any events in which he participated on that afternoon; that this amnesia is permanent; that the cause of this erasure of memory is brain injury sustained in an automobile accident which occurred at a point in time subsequent to the times in which the offenses charged in the indictment took place; that while he has no present independent recollection of the events of the afternoon in question he can construct a knowledge of what transpired from information given to him from other sources; and that except for this vacuity of memory he is perfectly able to follow the course of the proceedings against him and discuss them with his attorney.

The defendant, however, claimed that it must be concluded that he is incompetent to stand trial. Naturally, the prosecution objects, and thus the Court must make a judicial determination of the competency of the accused to stand trial.[3]

The basic concern of the Court in a case such as this where a defendant's mental state is raised as a plea in bar of prosecution is whether the individual in question is presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly assist in his defense. 24 D.C.Code, § 301 and 18 U.S.C. § 4244.[4]

2. Ibid.

3. Note 1, supra.

4. While these statutes use slightly different language their import is the same. Hansford v. United States, 124 U.S.App.D.C. 387, 365 F.2d 920, decided July 6, 1966.

The Supreme Court has commented concerning the nature of the inquiry that the Court must make under such statutes, stating:

> "* * * it is not enough for the district judge to find that 'the defendant [is] oriented to time and place and [has] some recollection of events', but that the 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).[5]

In discussing the concept of fitness to stand trial the United States Court of Appeals for the District of Columbia Circuit has utilized the guide that:

> "'[Competency] denotes the intellectual and emotional capacity of the accused to perform the functions which are essential to the fairness and accuracy of a criminal proceeding.'" Pouncey v. United States, 121 U.S.App. D.C. 264, 266, 349 F.2d 699 (1965)[6]

Since this defendant makes no claim of *present* insanity or inability to understand the proceedings against him, the sole issue before the Court is whether standing alone his absence of present independent recollection of the events of the afternoon in which the crimes charged were perpetrated renders him unable to properly assist in his defense, i. e. whether his found amnesia constitutes incompetency per se[7] or whether, in the words of Dusky, he lacks "sufficient present ability to consult with his lawyer with a reasonable degree of rational un-

derstanding" or, to paraphrase the observation made in Pouncey, supra, whether the capacity of the accused to perform the functions essential to the fairness and accuracy of a criminal proceeding is lacking.

█ It has been said that properly assisting in the defense comprehends participating "* * * into such phases of a defense as a defendant usually assists in, such as accounts of the facts, names of witnesses, etc." Lyles v. United States, 103 U.S.App.D.C. 22, 26, 27, 254 F.2d 725, 730 (1957). While this statement does not constitute a conclusive definition, it nods in the direction that the ability to remember the facts surrounding the occurrence of the alleged offense is normally expected to be present. It does not, however, answer the question directly, if it answers it at all, whether loss of such knowledge through amnesia constitutes incompetency per se. If memory is required, then this defendant would necessarily be entitled to release, as his amnesia is regarded as permanent; he is not presently insane or potentially dangerous to himself or others, and thus commitment under the terms of 24 D.C.Code, § 301(a)[8] would be illegal. Greenwood v. United States, 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412 (1956) and Rouse v. Cameron, D.C.Cir., 373 F. 2d 451, decided October 10, 1966.

But such release would be repugnant to the basic philosophy of our criminal jurisprudence in bringing to bar those who are morally responsible for their crimes,[9] and it is on the ground that accepting loss of memory as what amounts to a plea in bar in effect exculpates an accused from responsibility when in fact he may be responsible, that

---

5. The Dusky test is equivalent to the standard set forth in 24 D.C.Code, § 301 (a) Hansford v. United States, supra.

6. See also footnote 6 of dissent of Chief Judge Bazelon and Judge Wright in Whalem v. United States, 120 U.S.App. D.C. 331, 346 F.2d 812 (1965).

7. Such a rule was suggested by Chief Judge Bazelon in footnote 3 of his dissent in

Hunter v. United States, 119 U.S.App. D.C, 174, 338 F.2d 283 (1964).

8. "If the court [after a competency hearing] shall find the accused to be then of unsound mind or mentally incompetent to stand trial, the court shall order the accused confined to a hospital for the mentally ill."

9. Blocker v. United States, 110 U.S.App. D.C. 41, 288 F.2d 853 (1961).

the common law has generally rejected this plea.[10]

■■ A succinct and considered summary of the common law position is contained in Russell v. H. M. Advocate, 1946 S.C.(J.) 37. In that case an otherwise sane and lucid accused advanced the argument that her hysterical amnesia which subsisted at the time of the commission of the crime and prevented her present recollection of the time in question, rendered her incompetent to stand trial. The Court observed:

"It is, I think, plain from the unbroken practice followed from the earliest dates to which our records extend, that in dealing with pleas in bar of trial founded on some abnormal condition in the accused, the Court has balanced against each other two major considerations, viz., (1) fairness to the panel, who should not be tried if and so long as he is not a fit object for trial, and (2) the public interest which requires that persons brought before a criminal Court by a public prosecutor should not be permitted to purchase complete immunity from investigation into the charge by the simple expedient of proving the existence at the diet of trial of some mental or physical incapacity or handicap." pp. 46–47.

It went on to say, in refusing to be guided by dicta presuming to establish that obliteration of memory was an incapacity which rendered an accused unfit for trial:

"I do not consider that they were intended to be understood, or are capable of being understood, literally as applying to the case of a sane person—in this case one whom all the medical witnesses adduced have pronounced completely sane and normal—for so to read them would come near to paralyzing the administration of criminal justice. On any such reading the plea in bar would require to be sustained in most cases in which the accused had been under the influence of drink, or had sustained a head injury, at the time of the crime, or even if he was naturally a person of unreliable memory." p. 47.

However strong and pervasive the public policy to bring the morally responsible to bar, it cannot subvert the constitutional right to a fair trial which is not afforded to an accused who is prosecuted while legally incompetent.[11] It is to be noted, however, that the conceptual range of the expression "legally incompetent" only embraces deficiencies in the accused which actually prevent his fair trial and that mere deficiency standing alone is outside the limits of the concept; for, as noted in Lyles v. United States, supra:

"As of the time of trial the question, as prescribed by statute, is whether the accused is mentally competent to understand the nature of the charges against him and to assist in his defense. He may have a mental disease, and the mental disease may have been the cause of his criminal act, and he may be suffering from the same defect at the time of trial; but it is a scientific fact that he nevertheless may be competent to stand trial under this definition of competency. A paranoiac or a pyromaniac may well understand

---

10. Regina v. Podola [1959] All E.R. 418; United States v. Olvera, 4 U.S.C.M.A. 134 (1954); and Commonwealth ex rel. Cummins v. Price, 421 Pa. 396, 218 A.2d 758 (1966).
A subsidiary reason which has influenced the courts in rejecting the plea is that because amnesia is a highly subjective malady it is extremely difficult, often impossible, to distinguish real from feigned amnesia. See Comment, Amnesia, A Case Study in the Limits of Particular Justice, 71 Yale L.J. 109 (1961) and Article, Mental Capacity to Stand Trial, U.Pitt. L.R. 593 (1960). In this case this is moot point. The amnesia is genuine and the overriding consideration of due process prohibiting trial of an incompetent, Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) requires that its effect be delved into.

11. Pate v. Robinson, supra; Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956) reversing 96 U.S. App.D.C. 117, 223 F.2d 582 (1955); and Sanders v. Allen, 69 App.D.C. 307, 100 F.2d 717 (1938).

the charges against him and be able to assist in his defense." 103 U.S.App. D.C. p. 26, 254 F.2d p. 729.

Thus the question comes down to whether, in the light of the personal intellectual or emotional deficiencies of the accused he can perform the functions essential to the fairness and accuracy of the particular proceedings in which he is presently involved.

The rationale of this proposition was given recent application in Hansford, supra, footnote 4. In that appeal the conviction of an addict who was tried while admittedly under the influence of narcotics was reversed for a new trial because the failure of the trial court to conduct, *sua sponte*, an inquiry into his competency denied appellant a fair trial. The Court judicially noted that the use of narcotic drugs produces an acute brain syndrome the characteristic symptoms of which are impairment of memory; impairment of all intellectual functions including comprehension, calculation, knowledge and learning; and impairment of judgment. In stating why the rule of Dusky might preclude the trial of such a defendant, the Court said:

> "Subsumed [sic] under this formulation [Dusky] is the requirement that the defendant's memory and intellectual abilities, *which are crucial to the construction and presentation of his defense,* must not be substantially impaired by mental disorder." [Emphasis added] 365 F.2d 920, 922.

By this statement the Court made it clear that the attention of the trial judge is to be focused on whether or not those mental faculties, the possession of which is crucial to the construction and presentation of his defense are impaired, and that if *any* faculty [12] crucial to the construction and presentation of his defense is impaired that constitutes a disability rendering an accused incompetent to stand trial.[13]

Calling to mind that:

> " * * * the question in any case is whether mental illness has disabled the specific functions of personality which sound policy in the administration of criminal justice require before the accused may be subjected to adversary proceedings on the charges against him * * * " [14]

and the common law judicial policy disallowing loss of memory as a plea in bar,[15] this Court holds that amnesia per se in a case where recollection was present during the time of the alleged offenses and where defendant has the ability to construct a knowledge of what happened from other sources and where he has the present ability to follow the course of the proceedings against him and discuss them rationally with his attorney does not constitute incompetency per se, and that a loss of memory should bar prosecution only when its presence would in fact be crucial to the construction and presentation of a defense and hence essential to the fairness and accuracy of the proceedings.

That the application of this standard in cases like the one at bar can equitably accommodate both the public interest in bringing the morally responsible to bar and the right of an accused to a fair trial is exemplified by State v. Severns, 184 Kan. 213, 336 P.2d 447 (1959). In that case, the appellant, who possessed the faculty of memory at the time of the crime, became amnesic subsequent to his conviction at a trial at which he had testified. This conviction was reversed and remanded for a new trial. The appellant then raised his amnesia as a plea in bar of the second trial. The Court, faced with the rule that one unable to conduct his defense in a rational manner could not be tried, and mindful that loss of memory, in the abstract, affects that ability, found that the loss of memory between the first and second trials was

---

12. That memory and general intellectual ability are to be viewed as equal determinants of competency see United States v. Chisolm, 149 F. 284 (C.C. S.D.Ala., 1906).

13. Also see United States v. Kendrick, 331 F.2d 110 (4th Cir. 1964).

14. Note 6, supra.

15. Note 10, supra.

534

not sufficient in and of itself to prevent him from being retried where, in addition to the fact that there was no showing that appellant's memory respecting events, circumstances, and conditions surrounding the commission of the alleged crime could not be refreshed, said

"That the transcript of the record of the first case had been preserved and was available to the appellant and his attorneys, who could read it and thus ascertain the names of all the witnesses who testified in the first case; apprise themselves of the defense made in that trial; acquaint themselves with the testimony of such witnesses, including that of appellant while testifying as a witness in his own behalf; refresh appellant's memory with respect to all the facts and circumstances, testified to by him at that time; and become fully cognizant of any and all other matters transpiring during the trial of such action which might affect appellant adversely or otherwise on the trial of the second action." 336 P.2d 447, 454.

In that case the handicaps facing an amnesic accused; lack of knowledge of the circumstances of the crime, or of his own whereabouts or conduct at the time of the crime,[16] were ameliorated if not obviated by the availability of this information from reliable and impartial sources which could put at the defense's disposal substantially the same information the accused's present recollection could if he had it. While this placed the defendant in less than an ideal situation the Court, paraphrasing an expression of Justice Minton in Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953), noted:

"That appellant, like any other defendant, was entitled to a fair trial but not a perfect one * * *" 336 P.2d 447, 454

and adjudged that under all the circumstances defendant's trial was fair.

■ The Court concludes, therefore, from an examination of the authorities cited, that the rule to be applied in this case is whether insufficient information concerning the events at the time of the commission of the crime and evidence relating thereto is available to the defense so that it can be said that the presence of such an amnesia as we have here precipitates a situation in which defendant's memory is indeed a faculty crucial to the construction and presentation of his defense. Accordingly, since there has been no showing of the unavailability from sources extrinsic to the defendant of substantially the same information that his present independent recollection could provide if functioning, defendant's motion to be adjudged incompetent to stand trial is denied.

If after a full investigation counsel feels that in the light of what his diligence has uncovered full possession by defendant of independent recollection is really essential to the fairness and accuracy of a trial, the Court will entertain at the proper time a new motion on the question of defendant's competency to stand trial. In a hearing on such a motion, inquiry would properly focus on the availability and reliability of other sources of information and on the quantity and quality of the information received. Since much of the information necessary to the construction of a defense such as names of witnesses and tangible evidence is in the hands of the prosecution, the Court expects counsel to take advantage of the full range of discovery available under the Federal Rules of Criminal Procedure, including pretrial.

Counsel will submit proper order.

16. Comment, Amnesia, A Case Study in the Limits of Particular Justice, note 10, supra.