Robert WILSON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 20887.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 26, 1967.

Decided Jan. 18, 1968.

Mr. Herbert J. Miller, Jr., Washington, D. C. (appointed by this court), for appellant. Mr. Joseph S. McCarthy, Washington, D. C. (appointed by this court), was on the brief for appellant.

Mr. Theodore Wieseman, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker and David N. Ellenhorn, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

This appeal presents the unusual situation of the Government conceding a claim which is usually hotly contested— that the appellant suffers from permanent retrograde amnesia as a result of which he has no recollection of any of the events alleged in the indictment. The question raised on appeal is whether it is a denial of due process or of the right to effective assistance of counsel to try a defendant suffering from such a loss of memory.

Appellant was tried and convicted in five counts of assault with a pistol and robbery. The evidence presented at trial was certainly sufficient to sustain the conviction absent the amnesia. The testimony revealed that on October 2, 1964, at about 9:00 P.M., Gerald Fells, who had just parked his car and begun walking down the street, was robbed at gunpoint by two men who took his car keys and stole his car. The robbers held handkerchiefs to their faces and consequently Mr. Fells could not make a positive identification. Nevertheless he testified at trial that appellant "closely resembled" one of his two assailants.

A short time later, at about 9:20 P.M., two men held up a pharmacy on Connecticut Avenue and escaped with over $400 in cash and three bottles of the drug desputal. At trial an employee of the pharmacy positively identified appellant as one of the robbers. Soon after the robbery a police lookout was broadcast for two Negroes driving Mr. Fells' yellow Mustang and believed to have committed the pharmacy holdup. Two officers in a police cruiser spotted the stolen car heading south on Connecticut Avenue and began to pursue it. During the ensuing high-speed chase the suspects' stolen car missed a curve, ran off the road, and crashed into a tree. One of the two men found in the demolished car was dead; the other, the appellant here, was unconscious. Money, a gun, a bottle of desputal, some of Mr. Fells' effects, and a stocking mask and hat resembling those worn by the robbers were found scattered about the wreckage.

In the accident appellant fractured his skull and ruptured several blood vessels in his brain. He remained unconscious for three weeks. He still suffers from

a partial paralysis and a slight speech defect. He cannot now, and almost certainly never will, remember anything that happened from the afternoon of the robberies until he regained consciousness three weeks later. Except for this memory loss appellant's mental condition is normal. He suffers from no mental disease or defect, and apparently never has.

On February 23, 1965, appellant was committed to St. Elizabeths Hospital for a mental examination pursuant to 24 D.C.CODE § 301 (1967). The hospital reported that, although appellant was now of sound mental health, his amnesia rendered him incompetent to stand trial. On the basis of that report, the District Court judge held a competency hearing, found appellant incompetent to stand trial, and committed him to the hospital, where he remained for 14 months.[1] Then, in August 1966, the hospital re-examined its position and concluded that since appellant was not now suffering from mental disease or defect, and probably was not suffering from such a disorder at the time of the crime, there were no grounds to keep him hospitalized. The court was invited to "make appropriate disposition" of the case. Accordingly Judge McGuire held a second competency hearing in September 1966. The Government's witness, Doctor Economon, testified that appellant had permanent retrograde amnesia and would not be able to aid in his own defense in terms of remembering any of the acts alleged in the indictment. He had "no doubt" that appellant was not feigning. However, the doctor also testified that the appellant did have a rational understanding of the charges against him, that the suffered from no mental disorder, and that, but for the amnesia and slight physical

sequelae of the accident, he was in good health. On November 25, 1966, Judge McGuire filed a memorandum opinion finding appellant competent to stand trial. United States v. Wilson, D.D.C., 263 F.Supp. 528.

Judge McGuire abjured a *per se* approach to the question of incompetency by reason of amnesia, opting instead for a case-by-case determination of competency:

"* * * [T]his Court holds that amnesia per se in a case where recollection was present during the time of the alleged offenses and where defendant has the ability to construct a knowledge of what happened from other sources and where he has the present ability to follow the course of the proceedings against him and discuss them rationally with his attorney does not constitute incompetency per se, and that a loss of memory should bar prosecution only when its presence would in fact be crucial to the construction and presentation of a defense and hence essential to the fairness and accuracy of the proceedings.

\* \* \* \* \* \*

"* * * [T]he rule to be applied in this case is whether insufficient information concerning the events at the time of the commission of the crime and evidence relating thereto is available to the defense so that it can be said that the presence of such an amnesia as we have here precipitates a situation in which defendant's memory is indeed a faculty crucial to the construction and presentation of his defense. * * *" 263 F.Supp. at 533—534.

He concluded that, because "there has been no showing of the unavailability

1. It is unclear why appellant, who was not then suffering from any mental disease or defect, was committed to St. Elizabeths. 24 D.C.CODE § 301(a) states that if the accused is found to be "of unsound mind or mentally incompetent to stand trial," the court shall order him confined to a hospital for the mentally ill until he is restored to mental competency. But as

Judge McGuire recognized in his memorandum opinion following the second competency hearing, since appellant "is not presently insane or potentially dangerous to himself or others, [his] commitment under the terms of 24 D.C.CODE, § 301(a) would be illegal." United States v. Wilson, D.D.C., 263 F.Supp. 528, 531 (1966).

from sources extrinsic to the defendant of substantially the same information that his present independent recollection could provide if functioning, defendant's motion to be adjudged incompetent to stand trial is denied." *Id.* at 534. Judge McGuire left open to defense counsel renewal of his claim of incompetence if formal discovery and other sources of information did not disclose sufficient facts to enable appellant to receive a fair trial. Appellant renewed his claim of incompetency before trial, but Judge McGarraghy, the trial judge, found appellant competent. He was then tried without a jury and convicted.

■ We agree with Judge McGuire's general approach to assessing the question of competency. However, we remand to the trial judge for more extensive post-trial findings on the question of whether the appellant's loss of memory did in fact deprive him of the fair trial and effective assistance of counsel to which the Fifth and Sixth Amendments entitle him.

■ The Government relies on our decision in Hansford v. United States, 124 U.S.App.D.C. 387, 365 F.2d 920 (1966), to argue that amnesia, without an accompanying mental disease or defect, can never render the accused incompetent to stand trial. It cites a Yale Law Journal note, *Amnesia: A Case Study in the Limits of Particular Justice*, 71 YALE L.J. 109 (1961), for the proposition that "there is no record of any court holding a defendant incompetent to stand trial solely on the basis of amnesia." *Id.* at 116. But as that same article points out, this doctrinaire approach produces anomalous results. "[F]or while the policy underlying the doctrine of competency focuses on the impairment of the rational ability of the accused to conduct his defense, the rule presently applied by the courts is conditioned upon the fortuitous presence of a narrowly defined mental disorder." *Ibid.* Instead, as Judge McGuire said, the question must come down to whether,

"in the light of the personal intellectual or emotional deficiencies of the accused he can perform the functions essential to the fairness and accuracy of the particular proceedings in which he is presently involved." 263 F.Supp. at 533.

■ Whether the accused suffers from a mental disorder as defined in the AMERICAN PSYCHIATRIC ASSOCIATION MANUAL is not decisive. Nor is it enough that the evidence of the defendant's guilt is substantial. He is entitled to a fair trial as well as a trial in which he is proven guilty. To have a fair trial the defendant must be competent to stand trial. The test of competency must be whether he has sufficient "present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788; 4 L.Ed.2d 824 (1960). The accused must be able to perform the functions which "are essential to the fairness and accuracy of a criminal proceeding." Pouncey v. United States, 121 U.S.App.D.C. 264, 266, 349 F.2d 699, 701 (1965).

■ A prediction of the amnesic defendant's ability to perform these functions must, of course, be made before trial at the competency hearing. But where the case is allowed to go to trial, at its conclusion the trial judge should determine whether the defendant has in fact been able to perform these functions. He should, before imposing sentence, make detailed written findings, after taking any additional evidence deemed necessary,[2] concerning the effect of the amnesia on the fairness of the trial. In making these findings the court should consider the following factors:

(1) The extent to which the amnesia affected the defendant's ability to consult with and assist his lawyer.

(2) The extent to which the amnesia affected the defendant's ability to testify in his own behalf.

---

2. Assuming appellant waives his privilege, defense counsel may well be an invaluable witness on the question of the extent to which his client's amnesia affected his preparation of the case.

(3) The extent to which the evidence in suit could be extrinsically reconstructed in view of the defendant's amnesia. Such evidence would include evidence relating to the crime itself as well as any reasonably possible alibi.

(4) The extent to which the Government assisted the defendant and his counsel in that reconstruction.

(5) The strength of the prosecution's case. Most important here will be whether the Government's case is such as to negate all reasonable hypotheses of innocence.[3] If there is any substantial possibility that the accused could, but for his amnesia, establish an alibi or other defense, it should be presumed that he would have been able to do so.

(6) Any other facts and circumstances which would indicate whether or not the defendant had a fair trial.

After finding all the facts relevant to the fairness of the trial, considering the amnesia, the court will then make a judgment whether, under applicable principles of due process, the conviction should stand.[4]

■ If the court determines that the conviction may not stand because of the unfairness of the trial caused by the defendant's amnesia, the court will vacate the conviction and give the Government an opportunity to retry the case. If on retrial the Government is unable to overcome the unfairness which would have thus voided the first conviction, the indictment will be dismissed.

So ordered.

LEVENTHAL, Circuit Judge:

I concur in Judge Wright's general approach. I also concur in the result so that an order may issue, although my own view is that the judgment as it stands should be affirmed. We do not have here a record in which we are in doubt whether the District Court gave full consideration to the problem. Judge McGuire's pre-trial opinion seems to me to state the essence of the sound rule for this difficult kind of case. Although the trial judge did not make findings in the precise form set forth by Judge Wright, I think his findings reflect clearly enough that in his opinion the appellant was guilty beyond a reasonable doubt and that there was no reasonable basis for any contention that the outcome was significantly affected by appellant's lack of memory.

The matter must be put in terms of what is reasonable; obviously it is al-

---

**3.** *Compare* Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150 (1954), in which the Supreme Court held that ordinarily the judge need not, even in a circumstantial evidence case, charge the jury that to convict it must find that the Government's case negates every reasonable hypothesis of innocence. *See also* Hunt v. United States, 115 U.S. App.D.C. 1, 316 F.2d 652 (1963). The Fifth Circuit has adhered to this formulation as the standard for the trial judge in deciding whether the Government's case, if based only on circumstantial evidence, should go to the jury. *See, e. g.,* Cuthbert v. United States, 5 Cir., 278 F.2d 220, 224 (1960).

**4.** It would of course be desirable that defendants not only be competent to stand trial, but also have present awareness of their whereabouts and activities at the time of the crime of which they are accused. But courts have not considered such awareness as an essential ingredient of competence itself. As Judge Leventhal points out, the man accused of committing a crime while drunk may have no recollection concerning the alleged events. And in the so-called "delayed arrest" narcotics cases, while the guilty man may remember his crime, the innocent accused may remember nothing at all about his activities at the critical time. Yet this court, while acknowledging that a delayed arrest may entail loss of memory, has never considered such lack of memory as going directly to competence to stand trial. Instead, it has required that where there has been substantial delay in arrest there can be a conviction only if the Government's case has strong corroboration. *See, e. g.,* Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965). This approach, like that of Judge McGuire in the instant case, makes the probability of prejudice, not lack of memory *per se*, controlling.

ways *possible* that the defendant, if not deprived of memory, could have taken the stand and used words which, if believed, would have constituted some sort of defense. For example it is possible that the defendant might have testified that his dead companion had used physical coercion. The findings of the trial judge that he saw no "conceivable defense" is to be taken in its substantial intention—that he saw no reasonable possibility that the appellant could have given testimony that would exculpate him in the eyes of the law.

It is always possible that a defendant could gain an acquittal by perjuring himself, or more conscionably by presenting such a sympathetic figure on the witness stand that the jury would have used the mercy-dispensing power that it has in fact, though not in law. But such possibilities of prejudice, however realistic, do not suffice to prohibit the entry of a judgment on a verdict of guilty.[1]

I don't think appellant has shown that his constitutional rights have been violated. The fact that he has no memory as to the events brought out at the trial does not mean that he lacks present competency. I don't see that he is significantly different from a defendant who was so intoxicated that he "passed out on his feet" at the crucial time, and does not now have the slightest recollection with which he can give his counsel any help as to what he was doing at that critical time.[2] Whether a defendant's lack of memory of what he did is due to the fact that he was too drunk at the time, or ran into a tree ten minutes later, I think he can rightly be held to account—and be asked to hold himself to account if he is a man of conscience—provided the evidence is clear on what he did. It is prob-

ably commonplace for a man to be convicted of negligent homicide although in fact his memory of the event is vitiated by drink, shock, or both, and I see nothing unconscionable in this.

Judge Wright's opinion says that the inquiry into fairness requires the District Court to consider whether the Government's case negates all reasonable hypotheses of innocence. That particular terminology was once required by some courts for instructions to the jury where the prosecution was dependent on circumstantial evidence. It was scrapped on the sensible ground that it means no more than requiring proof beyond a reasonable doubt, yet the ritualization of this additional language might be misunderstood by a jury to require something additional by way of proof.[3] This problem would not apply to the situation before us, involving findings by a court.

Hence the nub of Judge Wright's opinion, if I understand it correctly, is that at least in a case of admitted amnesia due to brain damage, not subject to abuse as feigned, it is requisite for the court as well as the jury to make a fact finding that there is no reasonable doubt of guilt. The further court finding, that there is no substantial possibility that a defense was lost because of the amnesia, seems to me only a vigorous reiteration that there is no reasonable doubt of guilt—except that this finding would be applied to facts other than the evidence admissible and introduced before the jury, and applied after an inquiry into the actual workings of defense counsel, and to some extent the prosecution.

These standards seem sound and workable. I personally think they are rather clearly implied in the findings made by the trial judge. I also think that in view

---

1. *Compare* United States v. Austin-Bagley Corp., 31 F.2d 229, 233 (2d Cir.), cert. denied, 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002 (1929).

2. Whether the defendant's condition negatives responsibility is of course different from the question whether it negatives competency at trial. Intoxication may negative the specific intent required for robbery, but it does not negative responsibility as to those crimes requiring only a showing of general mens rea. Here of course there is no suggestion negativing appellant's responsibility at the time he acted.

3. Holland v. United States, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150 (1954), and cases cited.

of Judge McGuire's clear opinion at pretrial defense counsel would have brought forward to the trial judge any explanation of innocence that counsel thought sufficiently plausible and probable to be substantial, yet which could not be adduced because of defendant's amnesia. It is not suggested that the prosecution held back anything revealed by its investigation. Hence I am satisfied there was a fair trial in this case. However, being in accord with Judge Wright's general approach, and to avoid the impasse of a 3-way split on the order to be entered, I am voting for remand.

FAHY, Senior Circuit Judge (dissenting):

I assume as does the court that the evidence at trial was sufficient to sustain the conviction. This is often true notwithstanding a conviction cannot stand because obtained in violation of due process of law, the right to the effective assistance of counsel, or for some other error. I think this is such a conviction. Moreover, some situations arise which place a case beyond the reach of the law we administer. I think this is also such a situation. It is unique in rarity. In the automobile crash which followed the robbery one of the two occupants of the car was killed. Appellant suffered the grave injuries described in the court's opinion. A consequence is the complete and permanent deprivation of all knowledge of anything for a period extending from two hours preceding the robbery until three weeks after it. This is conceded by the United States. Of course he would not be relieved of responsibility because of these injuries if he were in a position to be tried consistently with our system of law. In my opinion he is not in such a position.

Appellant by reason of physical brain injury has not simply been completely and permanently deprived of all knowledge of the robbery itself but of all knowledge of anything covering the entire period surrounding it. To try him for crimes which occurred during this period is thus to try him for something about which he is mentally absent altogether, and this for a cause not attributable to his voluntary conduct. The effect is very much as though he were tried in absentia notwithstanding his physical presence at the time of trial.

We have held that memory is an essential element of competency to stand trial. Hansford v. United States, 124 U.S.App. D.C. 387, 389, 365 F.2d 920, 922. We there said, "the defendant's memory and intellectual abilities which are crucial to the construction and presentation of his defense, must not be substantially impaired by mental disorder." Likewise, in United States v. Chisholm, 149 F. 284 (S.D.Ala.1906), it was held that the test of competency to stand trial is whether the defendant,

is possessed of sufficient mental power, and has such understanding of his situation, such coherency of ideas, control of his mental faculties, and the requisite power of memory, as will enable him to testify in his own behalf * * * and otherwise to properly and intelligently aid his counsel in making a rational defense.

In a realistic sense appellant was incompetent at trial because of complete lack of factual understanding of the period involved in the charges on trial. Cf. Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824. And the conviction of one who is legally incompetent violates due process of law. Pate v. Robinson, 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815.

While appellant's amnesia is due to physical brain injury rather than a different kind of mental disorder, this should not differentiate his case, in passing upon his ability to be fairly tried, from the case of one whose lack of memory is due to mental illness. The question of competency to stand trial should not turn upon "the fortuitous presence of a

narrowly defined mental disorder." [1] Note, 71 YALE L.J. 109, 116.

The above bases for my view on the due process issue bring the trial also into conflict with appellant's right to the effective assistance of counsel guaranteed by the Sixth Amendment. Appellant presumably is competent to observe and in one sense to understand at trial what is then taking place, but he is unable to understand its factual basis since he completely lacks all knowledge bearing on the testimony concerning his whereabouts, condition, and actions for the period of several hours preceding, during, and for weeks after the events being described at trial. Thus, he cannot provide his counsel with information which might assist counsel in defending him.

In the *Chisholm* case, *supra*, the court pointed out that a defendant must be able to furnish his counsel with "all the material facts bearing upon the criminal act charged against him and material to repel the criminating evidence * * *." 149 F. at 287. Appellant is helpless to do this. He is unable to provide any facts and events of his life during the period when the crimes with which he is charged were allegedly committed. The *Chisholm* court, referring to "the language of the old books", recognized as a reason why an incompetent person is not forced to stand trial, that " 'there may be circumstances lying in his private knowledge which would prove him innocent or his legal irresponsibility, of which he can have no advantage, because they are not known to persons who undertake his defense.' "

The remand proceedings required by the court cannot solve the problem presented by this case. Appellant will no more be able to assist his counsel, and his counsel will no more be able effectively to assist him, at the remand hearing than at the trial itself. The terms of

the remand in substance require a hearing on the issue of prejudice. To try separately this issue would leave us where we are now, with the added difficulty that at the remand hearing it appears appellant would be required to testify whether or not he wished to do so, raising another Fifth Amendment problem. If the case is to turn on the issue of prejudice we should determine now that prejudice is inherent in the situation. Denial of the effective assistance of counsel, all else aside, establishes prejudice. Chapman v. State of California, 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705.[2]

Determination of guilt is not the test of the validity of a criminal conviction under our system of law. Though such a determination is essential, it must be reached at a trial which conforms with the requirements of the Bill of Rights. Ascertainment of guilt even to a scientific or mathematical certainty does not alone suffice. The plan of the majority to have a hearing at which the Government must prove its case beyond "all reasonable hypotheses of innocence" is no more than a different standard by which to judge the issue of guilt which has already been determined at trial. It does not cure the lack of the constitutional guarantees of due process of law and the right to the effective assistance of counsel.

The rare situation before us is unlike the "drunk" and "delayed arrest" narcotics cases referred to by my brethren. A separate body of law has developed on the effect of drunkenness on responsibility for crime. For example, where specific intent is an ingredient of the offense, drunkenness is material, and so too where premeditation is an ingredient. The accused is triable for crime though the degree of his responsibility might be affected. He can assist counsel and

---

1. This is a separate problem from a defense based on insanity at the time of the commission of a charged offense.

2. To rely upon the harmless error rule so as to make such a case as this, involving substantial rights, turn upon the result of a hearing on the issue of prejudice, overextends *Chapman*. Moreover, the burden on the prosecution imposed by *Chapman*, 386 U.S. at 24, 87 S.Ct. 824, cannot be met in such a case as this.

counsel can assist him. I know of no case in which it has been held that drunkenness has erased all memory of the crime imputed to the person on trial, a conceded phenomenon in our case.

The present case is distinguishable in another respect from those involving drunkenness: "Amnesia cannot truly be voluntary unless it results from conduct voluntarily undertaken with the intent of destroying a memory or at least with the knowledge that amnesia will probably result." Note, 71 YALE L.J. 109, 125, referred to by my brethren. It is not contended that appellant intended to destroy his memory or had any reason to believe the culmination of his conduct would be the complete and permanent loss of his ability to recall the events of a three-week period. A reasonably foreseeable result of voluntary drinking is the lessening of ability to recall events.

In the delayed arrest narcotics cases it is assumed that remembrance might be impaired due to the protracted delay of the Government in making its charge. This is deemed to place the accused at a disadvantage which would make his trial unfair unless the disadvantage—prejudice—is compensated by the Government. This is thought to be done so as to make the trial a fair one by imposing a heavier burden of proof upon the prosecution. Our case is different. The faculty of memory for the pertinent period is destroyed. This creates a different kind of disadvantage from an assumed difficulty in remembering. It disables the accused in a manner which takes from him a quality essential to a total personality. It removes him, as a total personality, from not only the scene of the crimes but everywhere for the period preceding, during, and for three weeks after the crimes.[3] The terms of the remand cannot supply the deficiency which brings his trial into conflict with due process of law, for the remand is subject to the same difficulty; and this is true, also, with respect to appellant's inability to assist counsel or to have the effective assistance of counsel.

I respectfully dissent.

3. The accused in the delayed arrest cases might not recall where he was or what he was doing on a specific day, but like any other person he is capable of knowing whether or not he ever was at a certain place or performed certain acts attributed to him. That he cannot recall at trial where he was at a particular time does not mean that he cannot with certa'nty remember, if it be true, that he was never, certainly not at a particular time, at a particular location, and that he never sold a package of drugs. Appellant cannot state he was not at one place or another at any time because for all he knows he might have been there during the three-week period. He cannot help his counsel about these matters, and counsel cannot effectively help him. The burden placed upon the Government by the remand in our case does not reach the kind of problem inherent in the situation. The remand is a conscientious effort to mold the law to a pattern which I think it cannot sustain.