

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0240-07

**REGINALD EUGENE MORRIS, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S AND STATE'S PETITIONS FOR DISCRETIONARY REVIEW FROM THE NINTH COURT OF APPEALS MONTGOMERY COUNTY

**PRICE, J., filed a dissenting opinion.**

### DISSENTING OPINION

The court of appeals found that the jury's verdict that the appellant was competent to stand trial, notwithstanding his claim that he had no memory of the offense, was *not* against the great weight and preponderance of the evidence.[1]  We granted both the appellant's and

---

[1] *Morris v. State*, 214 S.W.3d 159, 164-68 (Tex. App.—Beaumont 2007).

the State's petitions for discretionary review in order to revisit *Jackson v. State*,[2] our leading authority on the relevance of amnesia to the issue of a criminal defendant's competency to stand trial under the Texas statutory scheme. The appellant claims that the jury's verdict at the competency hearing that he was competent to stand trial was against the great weight and preponderance of the evidence—at least when measured against the standard for competency of an amnesiac adopted in *Jackson*.[3] The State maintains that the *Jackson* standard does not comport with the statutory definition of competency and argues that we should therefore now reject it. I would vacate the judgement of the court of appeals and remand to that court to reconsider its great-weight-and-preponderance determination in light of the standard for competency I suggest today. Because the Court does not, I respectfully dissent.

## OVERVIEW OF THE CASE

The appellant was charged with three counts of intoxication manslaughter. The evidence at trial showed that, after dark on July 17, 1999, the appellant's high-speed boat collided with a cabin cruiser on Lake Conroe, killing three people on the cabin cruiser. The

---

[2]

548 S.W.2d 685 (Tex. Crim. App. 1977).

[3]

Appellant prays that we find the competency jury's verdict to be against the great weight and preponderance of the evidence and that we therefore remand the cause to the trial court for a new trial. However, because this Court (unlike the courts of appeals) lacks jurisdiction to unfind facts in non-capital cases, we are unable to comply. *Meraz v. State*, 785 S.W.2d 146 (Tex. Crim. App. 1990). All we can do is say whether the court of appeals applied the proper legal standard in determining whether the competency jury's verdict was against the great weight and preponderance of the evidence and remand the cause to the lower court to reconsider the issue if it applied an improper standard on its initial review. *Cain v. State*, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997).

two contested issues at trial were whether the appellant was intoxicated at the time, and whether the appellant or his passenger, Gary Carlin, was piloting the boat when it struck the cabin cruiser. The appellant hit his head in the accident, suffering a traumatic brain injury. At the trial on the merits, the parties stipulated that, "as a result of [this injury, the appellant] has no memory of the events" from about a half hour before the collision until several days later. The jury convicted the appellant on all three counts and assessed his punishment at eighteen-year sentences for each count.[4]

Prior to trial, a separate jury was empaneled, pursuant to Subchapter C of Chapter 46B of the Code of Criminal Procedure,[5] to decide whether the retrograde amnesia that resulted from the appellant's head injury rendered him incompetent to stand trial. After hearing expert testimony from both parties, the jury found that the appellant had not established by a preponderance of the evidence that he was incompetent. On appeal, the appellant argued that the jury's verdict was against the great weight and preponderance of the evidence. He argued that, measured against the factors identified by this Court in *Jackson*, the evidence

---

[4]

The trial court ordered that the first two eighteen-year sentences should run consecutively to one another and that twelve years of the third eighteen-year sentence should run consecutively to the second eighteen-year sentence. The court of appeals held that this was an improper cumulation order, and reformed the judgment to reflect that the third eighteen-year sentence should run fully concurrent with the second eighteen-year sentence. *Morris v. State*, *supra*, at 188-90. We granted discretionary review from both parties challenging the propriety of this holding. Because I would remand to the court of appeals for reconsideration of the appellant's competency claim, I would refrain from addressing the punishment issue at this time.

[5]

TEX. CODE CRIM. PROC. arts. 46B.051 through 46B.055.

that his amnesia rendered him incompetent to stand trial was virtually uncontradicted.

The court of appeals disagreed. First, and without reference to *Jackson*, the court of appeals held that the competency jury was entitled to credit the opinion testimony of the State's experts that the appellant was competent and that its verdict was not against the great weight and preponderance of the evidence in light of that testimony. Turning, alternatively, to the *Jackson* factors, the court of appeals held that the jury's verdict was not against the great weight and preponderance of the evidence because the course of events *during the subsequent trial* were such that it was possible to determine retrospectively that the appellant's amnesia did not deprive him of a fair trial. We granted both the Appellant's and the State's petitions for discretionary review in order to examine the proper application of our decision in *Jackson* to the facts and procedural posture of this case.

As I understand the Court's opinion today, it essentially says three things with respect to these issues that I agree with. First, the Court holds that our present statutory scheme does not accommodate the kind of retrospective determination of competency that the court of appeals apparently believed that *Jackson* called for.[6] I certainly agree that it was "peculiar" for this Court in *Jackson* to have measured the rationality of the pretrial competency jury's verdict by evidence that the competency jury was not, and could not possibly have been,

---

[6]

*See* Majority opinion, at 16 ("But the statutes do not require a trial or appellate court, as a matter of course, to make a post-trial determination whether, as the trial actually unfolds, the amnesiac defendant was in fact deprived of a fair trial based on specific findings under the factors" that *Jackson* adopted from *Wilson v. United States*, 129 U.S.App.D.C. 107, 391 F.2d 460 (1968)).

aware of.[7] Second, I also agree with the Court's implication that some of the factors that *Jackson* adopted, albeit they were generated for application to a retrospective determination of competency, may nevertheless be relevant to a pretrial competency jury's determination—to the extent that they can be anticipated and proven pretrial.[8] Finally, I also agree with the Court that the only question before us *today* is whether the competency jury's verdict in the appellant's case was against the great weight and preponderance of the evidence *measured against the evidence that was before it at the competency hearing*.

I ultimately take issue, however, with the way the Court resolves the great weight and preponderance question. Like the court of appeals, this Court upholds the competency jury's verdict because it "was entitled to credit the opinion testimony of the State's experts that the appellant was competent" under our statutory standard.[9] In my mind, the resolution is not so simple as this. The parties' respective experts gave opinions that were predicated on wildly variable understandings of how the constitutional/statutory standard for competency to stand trial ought to apply in the context of an amnesiac defendant. Whether the

---

[7] Majority opinion, at 15.

[8] *See id*. at 16-17 ("That is not to say that the *Wilson* factors may not be consulted when the question before the court is whether the amnesiac defendant was deprived of a fair trial.")

[9] *Id*. at 18. The Court also declares itself in agreement with court of appeals's judgment that the competency verdict was not against the great weight and preponderance of the evidence. *Id*. Of course, this Court has no jurisdiction ultimately to pass on this question; we are limited to making pronouncements about whether the courts of appeals have applied the appropriate legal standard. *See* note 3, *ante*.

competency jury's verdict was against the great weight and preponderance of the evidence is a function, it seems to me, of which of these competing expert views (if any) best represents an application of the proper legal standard. Competency, *vel non*, may well be a question of fact, as the Court asserts.[10] But the proper determination of whether an amnesiac defendant is incompetent depends upon a proper understanding of what *the law* contemplates incompetency to *mean* in this context. The variability of the experts' competing views in this case is an indication of the need for clarification of the law. This is not a "credibility" determination;[11] the competency jury should not be allowed to decide which expert best understands how the statutory test for competency ought to apply to an amnesiac defendant. The Court should give the parties greater guidance on what the legal standard is in this context, and then remand the cause for the court of appeals to reconsider the case under that standard.

## THE LEGAL LANDSCAPE

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."[12] The

---

[10] *Id*. at 10.

[11] *See id*., at 19 ("The court of appeals appropriately resolved appellant's 'great weight and preponderance' claim by deferring to the jury's credibility determinations.").

[12] *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

prosecution and conviction of an accused while he is incompetent violates due process.[13] The standard for determining competency to stand trial under the Due Process Clause of the Fourteenth Amendment is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him."[14] This constitutional standard had been incorporated verbatim into statutory law in Texas since 1975.[15] It presently appears in Article 46B.003(a) of the Code of Criminal Procedure.[16] Under Texas law, the defendant is presumed to be competent and bears a burden to prove his incompetence by a preponderance of the evidence.[17]

In *Jackson* we found "no case yet reported which has held that the inability to recall the event charged because of amnesia constitutes mental incapacity to stand trial."[18] It remains the case to this day that no jurisdiction has ever held that a defendant's loss of

---

[13]
*Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Medina v. California*, 505 U.S. 437, 439, 449, & 453 (1992); *Godinez v. Moran*, 509 U.S. 389, 396 (1993).

[14]
*Dusky v. United States*, 362 U.S. 402 (1960); *Godinez v. Moran*, *supra*.

[15]
*See* Acts 1975, 64th Leg., ch. 415, p. 1095, § 1, eff. June 19th, 1975.

[16]
TEX. CODE CRIM. PROC. art. 46B.003(a). At the time of the appellant's competency hearing, in February of 2004, this provision had just become effective. *See* Acts 2003, 78th Leg., ch. 35, § 1, p. 57, effective Jan. 1, 2004.

[17]
TEX. CODE CRIM. PROC. art. 46B.003(b).

[18]
548 S.W.2d at 691.

memory of the conduct with which he is criminally charged will, by itself, render him incompetent.[19] Nevertheless, the Court recognized in *Jackson* that amnesia can sometimes be relevant—maybe even determinative—to the competency assessment.[20]

Jackson was prosecuted for voluntary manslaughter for killing his sister.[21] He was able to testify at trial, where he related that he was trying to scare his wife with a gun when it accidentally discharged, wounding her.[22] He apparently had no memory of the gun somehow discharging a *second* time and killing his sister. At a pretrial competency hearing, a psychiatrist testified that the killing of Jackson's sister had been so "abnormal" to Jackson that he "could not understand it, and thus could not remember it."[23] Jackson passed a polygraph examination showing the memory loss was genuine, and the psychiatrist considered it to be permanent.[24] On direct appeal to this Court, Jackson challenged the sufficiency of the evidence to support the jury's finding that he was competent to stand trial,

---

[19] *See* Majority opinion, at 19, note 37.

[20] *See* George E. Dix & Robert O. Dawson, 42 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 26.15 (2d ed. 2001), at 409 ("After surveying cases from other jurisdictions, *Jackson* rejected the views that amnesia is irrelevant to competency or that it is inherently incapable of ever justifying a conclusion that a defendant is incompetent.").

[21] 548 S.W.2d at 688.

[22] *Id*. at 688, 692.

[23] *Id*. at 690. Jackson apparently suffered some kind of dissociative amnesia.

[24] *Id*.

notwithstanding his amnesia.[25] In rejecting Jackson's argument, we implicitly adopted a set of factors for determining the impact of amnesia upon competency gleaned from *Wilson v. United States*,[26] a decision from the District of Columbia Court of Appeals that we identified as the "leading case" on the subject.[27]

Our adoption of the *Wilson* factors to measure the rationality of a jury's *pre-trial* assessment of a defendant's competency to stand trial was, at least in one important respect, "peculiar" indeed.[28] The court in *Wilson* described factors it believed relevant, *not* to a pre-trial jury's prediction with respect to an amnesiac defendant's competency, but to a trial judge's post-trial determination whether, as the trial actually unfolded, the amnesiac defendant was in fact deprived of a fair trial. As the court observed:

> A prediction of the amnesic defendant's ability to perform [the basic *Dusky*] functions must, of course, be made before trial at the competency hearing. But where the case is allowed to go to trial, at its conclusion the trial judge should determine whether the defendant has in fact been able to perform

---

[25] *Jackson* was decided before the courts of appeals acquired jurisdiction over criminal appeals in non-capital cases, and before this Court clarified, in *Meraz v. State, supra*, that, because the statutory burden of proof is on a defendant to prove he is incompetent to stand trial, any challenge to an adverse jury finding must be that such a finding was against the great weight and preponderance of the evidence. *See Bigby v. State*, 892 S.W.2d 864, 870-75 (Tex. Crim. App. 1994) (Court of Criminal Appeals still retains fact jurisdiction in capital direct appeals to determine whether issue upon which defendant has the burden of proof was decided adversely to him "against the great weight and preponderance of the evidence").

[26] 129 U.S.App.D.C. 107, 391 F.2d 460 (1968).

[27] 548 S.W.2d at 692.

[28] Majority opinion, at 15.

these functions. He should, before imposing sentence, make detailed written findings, after taking any additional evidence deemed necessary, concerning the effect of amnesia on the fairness of the trial. In making these findings the court should consider the following factors:

(1) The extent to which the amnesia affected the defendant's ability to consult with and assist his lawyer. (2) The extent to which the amnesia affected the defendant's ability to testify in his own behalf. (3) The extent to which the evidence in suit could be extrinsically reconstructed in view of the defendant's amnesia. Such evidence would include evidence relating to the crime itself as well as any reasonably possible alibi. (4) The extent to which the Government assisted the defendant and his counsel in that reconstruction. (5) The strength of the prosecution's case. Most important here will be whether the Government's case is such as to negate all reasonable hypotheses of innocence. If there is any substantial possibility that the accused could, but for his amnesia, establish an alibi or other defense, it should be presumed that he would have been able to do so. (6) Any other facts and circumstances which would indicate whether or not the defendant had a fair trial.[29]

Evidence with respect to some of the *Wilson* factors (most obviously, the "strength" of the prosecution's case, and whether the defendant "had" a fair trial) may not even be available for the parties to present to a jury in a pre-trial competency hearing. It would certainly be anomalous to measure the rationality of a jury's competency verdict by facts and circumstances that were never presented to it.[30]

---

[29] *Wilson v. United States*, 391 F.2d at 463-64 (footnote omitted).

[30] As a general rule, reviewing courts should measure the propriety of a trial-level ruling on the basis of the facts that were before the fact-finder at the time of the ruling. George E. Dix & Robert O. Dawson, 43A TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 43.453 (2d ed. 2001). *Cf. Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004) ("an appellate court's review of the record itself is generally limited to the evidence before the trial court at the time of the trial court's ruling."); *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003) ("As a general rule, an appellate court reviewing a trial court's ruling on the admission or exclusion of evidence must do so in light of the arguments, information, and evidence that was available to the trial court

This is not to say, however, that evidence with respect to many of the *Wilson* factors could *not* be anticipated, developed pre-trial, and presented to a pre-trial competency jury.[31]

Indeed, that is precisely what the appellant attempted to do in this case.[32]

---

at the time it ruled."). Nevertheless, in *Jackson*, we applied the *Wilson* factors by looking beyond the competency hearing to the record of the trial itself and held that Jackson's lack of memory of the event did not, in fact, deprive him of a fair trial. 548 S.W.2d at 692. On *this* basis, we found "the evidence sufficient to support the jury's verdict that appellant was competent to stand trial." *Id*. Thus, we essentially substituted our own *post hac.* assessment of the fairness of Jackson's trial for a determination of the rationality of the competency jury's pretrial prediction. It is not surprising, then, if equally anomalous, that the court of appeals took a similar approach in its consideration of the appellant's claim in light of the *Wilson* factors. *Morris v. State*, *supra*, at 167-69.

[31] I would reject the State's contention that the *Wilson* factors are relevant *only* to a post-trial, *post hac.* determination of competency, and cannot be developed pre-trial.

[32] At the conclusion of the pre-trial competency hearing, the appellant requested that the trial court submit the *Wilson* factors to the jury in the jury charge to aid in its decision whether he was incompetent under the *Dusky*/Article 46B.003(a) standard. The trial court refused. The appellant did not raise this refusal as jury-charge error on appeal, however, and it is therefore not before us on discretionary review. When performing the kind of factual-sufficiency analysis that the appellant *did* request on appeal, the reviewing court should measure the rationality of the jury's verdict by holding the evidence up to a hypothetically correct jury charge. *Wooley v. State*, 273 S.W.3d 260, 266-68 (Tex. Crim. App. 2008); *Grotti v. State*, 273 S.W.3d 273, 280-81 (Tex. Crim. App. 2008).

Additionally, and consistent with *Wilson*, the appellant specifically requested the trial court to make a retroactive determination of incompetency. At the conclusion of the charge conference at the close of evidence at the guilt phase of trial, the following exchange occurred:

> [Defense Counsel]: Also, Your Honor, we ask the Court to determine as a matter of law that [the appellant] is incompetent to stand trial based upon the evidence presented concerning the destruction of evidence, the inability of [the appellant] to testify in his own behalf, and the stipulation of the State that he has no memory after – based on the injuries.

> THE COURT: That would be denied.

However, the appellant claimed no error on appeal predicated upon this post-trial ruling either. The appellant does not now argue that due process compelled the trial court to take another look at the

**THE COMPETENCY HEARING**

At the competency hearing, the appellant first called Dr. Steven Rosenblatt, a psychiatrist, to the witness stand as an adverse witness. At the behest of the prosecution, Rosenblatt had reviewed the appellant's medical records and conducted a ninety-minute clinical interview on November 5, 2003, some three months prior to the competency hearing. He agreed that the appellant had suffered "a profound head injury" that caused "traumatic brain injury." It is common for such an injury, he acknowledged, to cause retrograde amnesia, that is, an inability to retain memory of events covering a period of time just before the injury. The appellant told Rosenblatt that he had been drinking and thought it would not be "reasonable" to drive the boat in that condition, so he went to sleep in the aft part of the boat instead, and that "he did not recall anything after going to sleep."[33]

Rosenblatt found that the appellant's "presentation was consistent with either two things: either having no recollection of that interval between going to sleep onboard the boat and awakening in the hospital, or that he is fabricating that information." However,

---

issue of his competency once the trial had concluded, as the federal court in *Wilson* required. Thus, the sole question presented on appeal and in the petitions for discretionary review is whether the competency jury's verdict was against the great weight and preponderance of the evidence.

[33] Rosenblatt, and later, Dr. Quijano, both suggested that the appellant's inability to remember the offense may have stemmed, not from his amnesia, but from the fact that he claimed to have gone to sleep in the aft of the boat before the accident. By that reckoning, of course, the appellant could not have been the driver of the boat. The State's theory of the case necessitates that the appellant either never went to sleep as he claimed, or else that he eventually woke up and drove the boat, causing the accident. Either way, consistent with the State's theory of the case, any inability to remember the accident that the appellant suffered must have derived from his head injury, not sleep.

Rosenblatt acknowledged that he was unaware of any indications that the appellant was malingering. When asked whether the appellant would be able to refute witness testimony about events that took place during this interval, Rosenblatt answered: "If we postulate that he is amnesic, he would have difficulty in refuting what they might say." With respect to whether the appellant would be able to testify in his own behalf, Rosenblatt testified as follows:

> Q. Now, would you agree with me that right now, Mr. Morris, based upon your examination of him November 5[th], that Mr. Morris cannot – lacks the capacity to testify in his own behalf concerning the events that occurred after he got in the boat and until he woke up in the hospital?

> A. If the information that he gave me is accurate, then from the time that he got in the boat and went to sleep until the time he awoke, until he awakened following the trauma, he would not have any recollection of that interval and, consequently, would have great difficulty in testifying concerning what happened during that interval.

> Q. Would that impact affect his ability to testify in his own behalf, not being able to recount that integral [sic] of time, whatever that time is?

> A. Well, I believe that he does have the capacity to testify in his own behalf concerning all the things that he knows; and I do not know whether he has any knowledge of what happened during that particular interval.

> Q. There is no indication that he has any knowledge of that event, based upon your examination of him?

> A. There is – that's correct.

> Q. And based on examination of all the records you see?

> A. That's correct.

It was Rosenblatt's ultimate opinion, however, that any inability that the appellant may

have to recount the events during the "interval" did not render him incapable of consulting with his lawyers with a reasonable degree of rational understanding. He believed that the appellant's inability to remember what happened at the time of the accident was relevant to, but not determinative of, his conclusion that the appellant was competent. When asked whether, if the *only* criteria was whether the appellant could relate the facts from his amnesic "interval" to counsel, the appellant would be incompetent, Rosenblatt replied:

> In the event that the only important part was the part from the time that he apparently went to sleep until he awakened in the hospital, there were no other factors, no other evidence, and no way of getting information about that, then – then he probably would not be able to assist his attorney and, thus, would not be competent to stand trial.

Under questioning by the prosecutor, Rosenblatt opined that for the appellant to be competent "does not require . . . that he remember everything in perfect, exact detail," and that, because the appellant was able to consult with his lawyers about other aspects of the State's evidence, covering events that occurred both before and after his lost "interval," he was competent to stand trial.

The appellant next called Jack Zimmerman, a board-certified criminal-defense attorney, to the stand. Zimmerman provided his professional opinion that, under certain circumstances, a defendant who, because of organic brain injury, cannot remember the events that make up the offense charged against him may be incapable of consulting with his counsel.

> Q. Is a person who does not have the present ability to consult with his attorney concerning the pertinent facts for which he is charged competent to

stand trial?

      A.   In my opinion, he is not, unless there is no question from independent sources about what happened.

      Q.   So, if, for example, multiple experts disagree on the facts, interpreting the facts of the case, would that be a pertinent factor?

      A.  Absolutely, because if he doesn't – if he or she does not – is not able to tell the lawyer what really happened, at least from that person's perspective, how is the lawyer to challenge the other witnesses that came to a different conclusion?

      Q.  If there is only one witness to the event and that person subsequent to the event dies, does that enter into your equation?

      A.  Well, it would in the same token as I said earlier.  If there is still some other evidence that would establish unequivocally what the facts are in that defense, then it would be less important; but if . . . there are only two possible witnesses to what happened – one of them is the accused and can't remember and the other is a dead person – then obviously that person that's on trial is not going to be able to assist his lawyer.

      Q.  He would not have the present ability to consult with his attorney?

      A.  If he doesn't remember what happened, I don't think he can consult with his attorney.

Zimmerman acknowledged on cross-examination that a defendant who could not remember the facts of the offense because he was either drunk or asleep at the time would not be incompetent to stand trial.

Dr. Daneen Milam, a board-certified neuropsychologist, was more categorical than Zimmerman in believing that a defendant who does not remember the events for which he is on trial cannot satisfy the legal standard for competency to stand trial.  Milam reviewed

the appellant's medical records, and agreed that he had suffered a severe head injury. She conducted a clinical interview and also subjected him to a battery of psychological tests. The testing revealed deficits in the appellant's left temporal lobe that affected his ability to transfer "working memory" into "long-term memory." Validity tests also showed he was not malingering. Milam maintained that the appellant would have suffered amnesia from his head injury even had he not been drinking at the time.[34] She acknowledged that the appellant's amnesia did not prevent him from developing a relationship with his attorneys, helping them prepare for trial, or comprehending and participating in the trial proceedings. Nevertheless, she believed that, because of his amnesia, the appellant was unable to disclose pertinent information to his attorneys about what happened at the moment of the offense, challenge the accounts of witnesses against him, or testify in his own behalf about the specific event that formed the basis of the charge against him. She concluded that, on balance, the appellant was incompetent to stand trial "[b]ecause he cannot do the separate factors that would be required to be able to defend himself."

Sergeant Kenneth Henderson of the Montgomery County Sheriff's Office was present when the appellant's boat was recovered from the floor of the lake. He testified that there

---

[34] The medical records showed that the appellant had a blood alcohol concentration of .18 when he arrived at the hospital. Milam testified that, while alcohol can certainly induce or exacerbate amnesia, alcohol-induced amnesia does not typically affect memory of events occurring after the alcohol wears off. Because the appellant was unable to remember events for several days after the accident, Milam concluded that the amnesia was a product of his head injury. No witness at the competency hearing testified otherwise.

were two people on the appellant's boat at the time of the collision, the appellant and Gary Carlin. Carlin had since died. Experts from both the State and the defense examined the boat after it was recovered, and came to "at least two different opinions . . . as a result of the examination." Although no eyewitness could identify the driver of the appellant's boat, there were "other factors that tend to show who was driving the boat," some medical and some scientific. However, the experts differed in their interpretations of this evidence.[35]

The State called clinical and forensic psychologist Dr. Walter Quijano to the stand. Quijano did not extensively review the appellant's medical records or personally evaluate him for competency, but he testified generally that amnesia alone does not justify a finding of incompetency and that, "[if] the person has amnesia, then one is to determine if the case against him can be reconstructed by witnesses, physical evidence[.]" On cross-examination, Quijano elaborated:

> Q. . . . there is a lot that we don't know happened.
>
> A. That's exactly correct, that many of these things are speculative; and that is why amnesia alone is not sufficient to declare somebody incompetent.
>
> Q. It's amnesia plus no witnesses.

---

[35] Indeed, at trial, both sides presented experts in engineering and biomedical/biomechanical engineering to reconstruct the accident and try to determine, from the wreckage of the boats and the injuries suffered, who was driving the appellant's boat at the moment of the collision. The State's experts believed that the circumstantial evidence was more consistent with the conclusion that the appellant was the driver, while the defense experts believed it more likely that Carlin had been driving. *Morris v. State*, *supra*, at 168. The pre-trial competency jury did not hear the specifics of any of these expert opinions, but only that there was a difference of opinion among unnamed experts.

A. Amnesia and the lack of external data.

Q. And part of the external – external data is no witnesses?

A. No witnesses.

Q. Conflicts in expert opinion?

A. Yes.

Q. Amnesia plus no eyewitness and conflicts in expert witnesses, those things could render somebody incompetent?

A. That is true. If those conditions are present, then he will be incompetent.

Quijano also acknowledged that whether a defendant's amnesia would prevent him from testifying about unremembered events is also an "important factor" in the competency determination.

Later, on re-cross-examination, Quijano returned to the subject of conflicting expert testimony.

Q. If there is – going back, the experts are conflicting. The expert opinions do conflict, right?

A. Yes.

Q. And it goes back to if they are conflicting about what the meaning of the – how the accident occurred or what happens, the testimony of the individual becomes more important, correct?

A. Yes.

Q. And who is driving or who can identify who the driver was, then it becomes even more important, correct?

A. Yes.

Q. And under those circumstances, a person would be incompetent?

A. It would – he would be incompetent if there are no external data and only he can reconstruct it. Of course, he could not; but if it could be reconstructed from other sources, then he is not incompetent. Remember, the law says present ability to consult with his lawyer with a rational understanding. Not factual. It is rational understanding.
And so, the factual data have to be brought in from the outside in the case of in coma – not in coma, amnesiac.

Q. So, if experts disagree on interpretation of outside data –

A. Then it would be up to the trier of facts to decide.

Q. But then, of course, you have incompetency.

A. Correct. If the trier of fact decides there is sufficient external data, then the person is competent in spite of amnesia. If the triers of facts decide that there is no sufficient reconstruction, then they – the amnesiac becomes incompetent.

After it retired to deliberate, the competency jury sent out a note requesting the trial court to provide "a copy of the questioning and answers of Dr. Kahano [presumably Quijano]." The trial court instructed the jurors that they could have a witness's testimony read back to them, but only after they first gave written notice of a disagreement as to some specific aspect of the witness's testimony.[36] The jury sent no further notes before finding that the appellant had failed to prove he was incompetent to stand trial by a preponderance of the evidence.

---

[36] See TEX. CODE CRIM. PROC. art. 36.28 ("In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and not other[.]").

**ANALYSIS**

**The Competing Experts**

The appellant's competency hearing was not simply, as the court of appeals seems to have viewed it, a battle of experts—at least not in the usual sense of a disagreement among expert witnesses who have applied the same legal standard to the facts as they perceive them. Each expert at the appellant's competency hearing had a different conception of how amnesia bears on the question of competency to stand trial. Rosenblatt believed that a defendant's ability to remember the events of the offense would be relevant to, but far from determinative of, his ability to consult with counsel with a reasonable degree of rational understanding. In Rosenblatt's opinion, a failure to remember the events that comprised the offense could never, without more, render the appellant incompetent. Milam took the polar-opposite view, that no matter how else the appellant may be able to assist his attorneys in his own defense, if his amnesia prevented him from giving them a first-hand account of the facts of the offense, he could not be considered competent.

Quijano (in whose testimony the jury seems to have been particularly interested) carved out a middle ground which comports more closely, if imperfectly, with what I would hold to be the appropriate legal standard to be. He believed that a defendant's inability to remember the event itself because of amnesia would render him incompetent only if there were insufficient "external data" to allow his counsel to reconstruct the offense without resorting to the appellant's lost account. I think that the expert whose view most closely

reflects the appropriate legal standard is Zimmerman. Zimmerman opined that, unless "independent sources" would allow the parties to "establish unequivocally" what happened, the defendant's involuntarily induced amnesia, if it caused him not to remember the specific events giving rise to the criminal charges against him, would render him incapable of assisting in his defense, and hence, incompetent.

Unfortunately, because Quijano and Zimmerman did not interview the appellant or review his medical records, neither of them was in a position, or was even asked, to express an ultimate opinion about whether the appellant himself was competent to stand trial.[37] Only Rosenblatt and Milam expressed opinions with respect to the appellant's competency. In my view, the court of appeals erred to resolve the appellant's great-weight-and-preponderance claim by merely deferring to the jury's apparent decision to credit Rosenblatt's expert opinion over Milam's, when neither Rosenblatt nor Milam was operating under a wholly appropriate standard.[38] For this reason, I would remand the cause to the court of appeals to reconsider the appellant's claim in light of the proper standard, to which I now turn.

### Amnesia and Incompetency to Stand Trial

Under the *Dusky*/Article 46B.003 standard, to be competent a defendant must have

---

[37]
The court of appeals asserted that Quijano testified that the appellant was competent. *Morris v. State*, *supra*, at 167. While it is true that Quijano testified that amnesia *alone* would not render the appellant *in*competent, I cannot find anyplace in the record where he was ever asked by either party to express an ultimate opinion whether the appellant was competent to stand trial.

[38]
*Morris v. State*, *supra*, at 167.

"sufficient present ability to consult with [his attorney] with a reasonable degree of rational understanding." Read narrowly, this language does not seem to require that a defendant have any memory of the alleged offense in order to be competent to stand trial, so long as he has the *present* mental wherewithal to communicate rationally with counsel. Under this understanding of the standard, amnesia would have no bearing at all on the competency determination.[39] I would reject this narrow construction of the standard, however, for three reasons.

First, such a narrow construction fails to take full account of the constitutional prohibition against being tried while incompetent. Consistent with due process, the State may not prosecute a criminal defendant who is unable, not simply to consult with counsel, but also, more broadly, to "assist in preparing his defense."[40] An amnesiac who lacks any memory of the events for which he is on trial undoubtedly suffers at least some impairment in his ability to assist in the preparation of his defense.[41] A too-narrow construction of the

---

[39] The Court also seems to reject this narrow reading of the standard—at least inasmuch as it refuses categorically to "discount the possibility that there might one day be an extraordinary case in which an inability to recall the charged event because of amnesia could constitute mental incapacity to stand trial." Majority opinion, at 20-21. It is not at all clear to me from the Court's opinion, however, how it would be able to identify such "an extraordinary case." Perhaps a case in which the defendant, through no fault of his own, cannot remember the charged event, the possibility of a "viable defense" seems manifest under the circumstances of the particular case, but the defendant wholly lacks the necessary "external data" (in Dr. Quijano's terms) to marshal any evidence in support of that defense? *Id*. at 19.

[40] *Drope v. Missouri*, *supra*, at 171.

[41] In *Dusky*, the Supreme Court agreed with the Government's concession that competency

*Dusky*/Article 46B.003 standard threatens to inadequately express the true ambit of the constitutional protection, and courts should prefer a statutory construction that does not provoke constitutional questions.[42] Second, our opinion in *Jackson* implicitly rejected such a narrow view of *Dusky*. Otherwise, we would never have looked to the *Wilson* factors for guidance, but would simply have held, categorically, that amnesia has no relevance to the competency calculus. Third, the Texas Legislature has made it manifest that it actually contemplated a broader understanding of Article 46B.003. In Article 46B.024 of the Code of Criminal Procedure, the Legislature enumerated certain factors it considered mandatory to any expert evaluation of competency to stand trial.[43] Among those factors is whether the defendant is able to "disclose to counsel pertinent facts, events, and states of mind."[44] This factor is relevant to the competency determination only if the present ability to consult with

---

must entail *more* than a finding that "the defendant is oriented to time and place and has some recollection of events." 362 U.S. at 402 (internal quotation marks and parentheses omitted). By necessary implication, this means that competency must *include* the capacity to have "some recollection of events."

[42]

*See* TEX. GOV'T CODE (Code Construction Act) § 311.021(1) ("In enacting a statute, it is presumed that . . . compliance with the constitutions of this state and the United States is intended[.]"). Because Article 46B.003 was enacted by the 78th Legislature, this provision of the Code Construction Act applies. *See Id*., § 311.002(2) (Code Construction Act provisions apply to "each amendment, repeal, revision, and reenactment of a code or code provision by the 60th or a subsequent legislature").

[43]

*See* TEX. CODE CRIM. PROC. art. 46B.024(1)(B) ("During an examination under this subchapter and in any report based on that examination, an expert shall consider, in addition to other issues determined relevant by the expert, the following: (1) the capacity of the defendant during criminal proceedings to . . . (B) disclose to counsel pertinent facts, events, and states of mind[.]").

[44]

*Id*.

counsel includes the present ability to relate to counsel the events of the crime itself. Amnesia, no less than, say, schizophrenia or some other debilitating mental illness, may very well adversely affect a defendant's ability to relate the specifics of the offense. For all these reasons, I reject a narrow understanding of Article 46B.003(a)(1), and would hold that the genuine inability of a defendant to remember the facts of the offense because of injury-induced amnesia is a relevant determination in whether he has the present ability to consult with his counsel with a reasonable degree of rational understanding.[45]

I would also reaffirm the relevance of the *Wilson* factors to the determination of whether genuine amnesia may render a particular defendant incompetent—at least to the extent they can be developed in a pre-trial context.[46] As in *Wilson*, this case involves "the

---

[45]
This case does not present the question of the relevance of drug- or alcohol-induced amnesia to a defendant's competency to stand trial. *See* note 34, *ante*. Because of the ease with which amnesia may be feigned, one oft-cited and influential commentary has taken an understandably chary view of claims of incompetency due to amnesia caused by a defendant's voluntary consumption of drugs or alcohol. *See* Note, *Amnesia: A Case Study in the Limits of Particular Justice*, YALE L. J. 109 (1961). The notion seems to be that a defendant who voluntarily imbibes long enough or in sufficient quantity to impair his memory has, by this own conduct, essentially forfeited his right to participate in his defense against whatever culpable conduct he may have perpetrated while in that condition—not unlike the defendant who forfeits his right to be physically present at his own trial because of his incorrigibly contumacious behavior in the courtroom, under *Illinois v. Allen*, 397 U.S. 337 (1970).

[46]
I reiterate that, although the appellant asked the trial court to reconsider the issue of his competency to stand trial at the conclusion of the guilt phase of his trial, he did not challenge the trial court's ruling at that juncture as an independent point of error on appeal, and it is not before us on petition for discretionary review. *See* note 32, *ante*.

unusual situation" in which accident-induced amnesia was all but conclusively established.[47]

Of course, the failure to remember the offense itself, even from such an accident, will not render the appellant incompetent *per se*. But if that failure seriously impedes his ability to relate facts about the offense to counsel and, with the assistance of counsel, to a jury, that would significantly tend to exculpate him, reduce the level of his criminal culpability, or legally excuse his otherwise criminal conduct, then I believe he should be found incompetent to stand trial.

In making this determination on remand, the court of appeals should assess the weight of the evidence, as developed at the competency hearing, to show the following:

- The extent to which injury-induced amnesia affected the appellant's ability to consult with and assist his counsel (including the extent, if any, to which his inability to remember the accident might have impaired his counsel's ability to challenge the State's evidence and marshal evidence in the appellant's defense);

- the extent to which injury-induced amnesia affected the appellant's ability to testify and give his own version of the accident, including, obviously, an account of who was driving the boat;

- the extent to which the evidence could be extrinsically reconstructed, and the extent of the State's cooperation in that reconstruction;

- the strength of the State's case to establish any element of the crime to which the appellant's loss of memory could conceivably relate, under the particular circumstances of the case.

---

[47]

*Wilson v. United States*, *supra*, at 461. The State did not formally concede until its stipulation at trial that because of his head injury the appellant could not remember the accident. But nor did it refute the appellant's substantial evidence at the competency hearing that he suffered retrograde amnesia as a result of his injuries from the collision. *See* note 34, *ante*.

With respect to the last factor, I would offer three observations. First, if it is possible under the particular circumstances of the case that the facts as the appellant could remember them, but for his amnesia, would exculpate him, reduce his culpability, or excuse his conduct, then it must be presumed that he would remember them so, and the relative strength of the State's case must be assessed with that presumption in mind. Second, it is emphatically improper to declare the appellant competent simply because the State has legally sufficient evidence to support his conviction.[48] Third, while the appellant's experts were apparently able to reconstruct the accident in an exculpatory light without his input,[49] this fact should not necessarily be enough to declare the appellant competent. If it is possible that, by his own description to his counsel, and by testimony before the fact-finder, the appellant could significantly enhance the expert opinion that he was not the one driving the boat, and thus further diminish the strength of the State's case with respect to that indispensable element

---

[48]

The court of appeals found it at least significant that the circumstantial evidence at trial "supported the jury's conclusion that" the appellant was driving the boat at the time of the accident. *Morris v. State*, *supra*, at 167-68. In the first place, we do not think the court of appeals should have considered the evidence adduced at trial in determining the rationality of the competency jury's verdict. *See* note 30, *ante*. Secondly, to the extent that the evidence at the competency hearing might show that the State could present legally *sufficient* evidence to support a verdict against the appellant, this does not demonstrate that he is competent to stand trial any more than the presentation of legally sufficient evidence will render constitutional error harmless beyond a reasonable doubt. *See Satterwhite v. Texas*, 486 U.S. 249, 258-59 (1988) (error may be said to "contribute to the verdict" even if the State presents other evidence that is legally sufficient to establish guilt).

[49]

*See* note 35, *ante*.

of the offense, he may yet prove to be incompetent.[50]

The Court suggests that it is enough to establish an amnesiac defendant's competency that, despite the absence of any memory of the alleged offense, he retains an ability to present a "viable defense."[51]  In my view, however, the question under the *Wilson* standard is not whether the defendant can put on a defense that is merely plausible, "viable," or even stout. Not even a stout defense assures the kind of fairness that due process contemplates when it prohibits putting an incompetent defendant to trial.  Rather, the circumstances of the case must be such that the defendant's debility is *fully* compensated for—that is to say, the defendant can put on as stout a defense as he would presumably be able to proffer were he able to remember the specifics of the alleged offense.  That the appellant in this case was able to marshal a defense does not mean that the State's evidence was, in the words of *Wilson*'s

---

[50]
Looking at the evidence that was developed at trial, the court of appeals found it significant that the appellant's experts were able "to reconstruct the accident and express opinions whether [the appellant] was driving immediately prior to the collision[,]" and that "the jury . . . heard substantial evidence regarding [the appellant's] contention that he was not driving at the time of the collision." *Morris v. State*, *supra*, at 168 & 169.  First of all, I repeat that the court of appeals should not have been considering the evidence at trial in deciding whether the competency jury's verdict was against the great weight and preponderance of the evidence. *See* note 30, *ante*.  Second, even if the evidence at the competency hearing shows that the appellant would be able to offer "substantial evidence" that he was not driving the boat, this will not necessarily show him to be competent if, but for his accident-induced amnesia, he could offer significantly more extensive or persuasive evidence that he was not the one driving the boat.  That this question is subject to expert debate suggests that the State's case is *not* so strong "as to negate all reasonable hypotheses of innocence." *Wilson v. United States*, *supra*, at 464.

[51]
Majority opinion, at 19.

fifth factor, "such as to negate all reasonable hypotheses of innocence."[52] On the contrary, the fact that the defendant could marshal some semblance of a defense—even a fairly stout one—even in the absence of his own ability to remember, suggests to me that it would be manifestly unfair to put him to trial with less than all of the evidence we are constrained to presume could serve to convince a jury that he is innocent. Because if the defendant can marshal a plausible defense, even without remembering the event, it is doubtful that the State's case can be regarded as so compelling as to justify discounting the possibility that his memory could have made a difference to the outcome. To force such a defendant to stand trial anyway tolerates too great a risk of convicting an innocent man. That seems even less justifiable to me than trying a manifestly incompetent (because, *e.g.*, schizophrenic) defendant simply because there is no conceivable question as to his guilt—something the Due Process Clause of the Fourteenth Amendment would clearly prohibit.

## CONCLUSION

For these reasons, I would vacate the judgment of the court of appeals and remand the cause to that court for further consideration of the competency issue consistent with this opinion. Because the Court does not, I respectfully dissent.

Delivered: November 18, 2009
Publish

---

[52] *Wilson*, *supra*, at 464.